In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 05-3132 & 05-4469

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WILLIAM OTERO and JAMES WOODS,

*Defendants-Appellants.*

———————

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 04 CR 281—**Rudolph T. Randa**, *Chief Judge.*

———————

ARGUED JANUARY 11, 2007—DECIDED JULY 19, 2007

———————

Before BAUER, FLAUM, and ROVNER, *Circuit Judges.*

BAUER, *Circuit Judge.* William Otero and James Woods were convicted of conspiracy to possess with intent to distribute at least 500 grams of cocaine (count one), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846 and 18 U.S.C. § 2. Additionally, Woods was convicted of knowingly using a communication facility in committing the conspiracy (count two), in violation of 21 U.S.C. § 843(b), and Otero was convicted of maintaining a place and intentionally making the place available for the purpose of unlawfully distributing a controlled substance (count three), in violation of 21 U.S.C. § 856(a)(1). Both Otero and Woods were sentenced to 300 months' imprisonment.

On appeal, Otero challenges the denial of his motion to suppress evidence seized from his home pursuant to a federal search warrant, arguing that the affidavit supporting the search warrant did not establish probable cause and that the good faith exception to the warrant requirement is inapplicable. He also argues that the district court erred in sentencing him to 300 months' imprisonment for maintaining a drug-house, considering that the statutory maximum for violating 21 U.S.C. § 856(a)(1) is 240 months' imprisonment.

In his appeal, Woods contends that the district court improperly instructed the jury regarding the standard of proof necessary to establish venue. He also asserts a number of challenges to his sentence. For the reasons set forth below, we affirm the defendants' convictions, Woods' sentence, and Otero's sentence on the conspiracy charge, but we vacate and remand Otero's sentence as to count three.

## I.  Background

In October of 2004, the Drug Enforcement Administration ("DEA") received a tip from a confidential informant that Otero and Woods were distributing cocaine. On November 15, 2004, DEA Special Agent Enrique Carlton contacted Woods to see if he would sell him cocaine. After a series of phone calls, Woods agreed to meet Carlton the next day in Kenosha, Wisconsin. During the early morning hours of November 16, Woods nearly ran over a Kenosha police officer. After the encounter with the officer, Woods contacted Carlton and told him that he would not deliver the cocaine in Wisconsin. Instead, Carlton met Woods in a parking lot at the Gurnee Mills Mall in Illinois and paid him $1,650 in exchange for two ounces of cocaine. Following the transaction, Woods met Otero and Victor

Cabrera, the supplier of the cocaine, at a nearby restaurant and gave Otero the money obtained during the sale.

On November 17 and 18, Carlton contacted Woods several times, attempting to schedule another controlled buy. Woods agreed to sell nine more ounces of cocaine to Carlton but refused to meet him in Kenosha, Wisconsin. Woods explained that he would not travel to Kenosha to deliver the cocaine because he feared that there was a warrant out for his arrest in Wisconsin based on the November 16 incident that he had with the Kenosha police officer. On November 19, 2004, Cabrera drove with Woods to the Gurnee Mills Mall where Woods delivered the cocaine to Carlton. After the transaction, both Woods and Cabrera were arrested.

Following his arrest, Woods told the investigating agents that he had obtained the cocaine that morning from Otero at Otero's residence located at 6328 73rd Street, Apartment 206, Kenosha, Wisconsin. He also stated that while picking up the drugs, he observed a scale and additional ounces of cocaine on a table inside Otero's residence. He claimed that he had previously seen Otero with a firearm in the apartment, but he had not seen Otero with a firearm that day. Finally, Woods told the agents that Otero typically hid his cocaine in the apartment's garage or bedroom.

After learning this information, Carlton filed an affidavit in support of an application seeking the issuance of a warrant to search Otero's apartment in Kenosha, Wisconsin. Carlton's affidavit stated that Woods had delivered cocaine to Carlton on November 16 and 19, 2004. The affidavit included Woods' pre-arrest statements that he had refused to travel to Kenosha and Woods' post-arrest statement that he had received the drugs on November 19 from Otero at Otero's apartment in Kenosha, Wisconsin. The affidavit also included Woods' statements concerning

Otero's residence. Finally, Carlton's affidavit stated that Cabrera confirmed Woods' claim that both Cabrera and Otero were present during Woods' November 16 transaction with Carlton.

On November 19, 2004, based on Carlton's affidavit, a United States magistrate judge issued a search warrant for Otero's apartment and one-car garage. The agents executed the warrant and found a bottle of inositol, plastic baggies, "corner cuts" from plastic baggies, a glass pipe wrapped in foil, and other paraphernalia used to smoke crack cocaine. The agents also found a number of items in Otero's bedroom and garage that had cocaine residue on them, including a scale, measuring cup, table, razor blade, spoon, and plastic film container.

Before his trial, Otero moved to suppress the evidence obtained during the search, arguing that there was no probable cause to issue the warrant. Additionally, Otero argued that Woods' pre-arrest statements (that he would not travel to Kenosha to deliver the cocaine because of his earlier run-in with the police) and post-arrest statement (that he had obtained the cocaine that morning from Otero at his apartment in Kenosha) were inherently unreliable and rendered Carlton's affidavit internally inconsistent. The magistrate judge disagreed and found that the search warrant was supported by probable cause. The district court adopted the magistrate judge's recommendation and denied Otero's motion to suppress.

The items seized and statements made by Otero during the search of his residence were introduced into evidence at his trial; the jury returned a verdict of guilty on each count. The district court sentenced him to 300 months' imprisonment on each count to be served concurrently.

In a separate jury trial, Woods was also found guilty. The district court sentenced Woods as a career offender to

300 months' imprisonment as to count one and 48 months as to count two, with the terms running concurrently. Both Otero and Woods filed these timely appeals, which we have consolidated.

## II. Discussion

### A. Probable Cause to Search Otero's Apartment

On appeal, Otero renews his argument that the search warrant was not supported by probable cause. We review *de novo* the district court's determination that the supporting affidavit provided probable cause to believe that a search would uncover evidence of a crime. *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003). We have stated:

> A magistrate's determination of probable cause is to be given considerable weight and should be over-ruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated.

*United States v. Wiley*, 475 F.3d 908, 914-15 (7th Cir. 2007) (*citing United States v. Newsom*, 402 F.3d 780, 782 (7th Cir. 2005)). Where probable cause is based on information supplied by an informant, courts consider the following factors: "(1) the extent to which the police have corroborated the informant's statements; (2) the degree to which the informant has acquired knowledge of the events through firsthand observation; (3) the amount of detail provided; and (4) the interval between the date of the events and the police officer's application for the search warrant." *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002).

We agree with the magistrate judge that the affidavit did contain enough evidence to establish probable cause to search Otero's apartment. First, much of the information in the affidavit was based on Woods' firsthand observations. Carlton's affidavit set forth Woods' post-arrest statement that he had obtained the cocaine that morning from Otero at Otero's apartment.[1] Second, Woods provided sufficient detail concerning Otero's apartment: he identified the address of Otero's apartment, provided specific locations in the apartment where Otero hid his cocaine, and indicated that he had observed a scale and additional ounces of cocaine in Otero's apartment while picking up the cocaine. Third, the search warrant was requested shortly after Woods told Carlton that Otero had supplied him with the cocaine. Finally, Cabrera's information—that Otero was present during and involved in the cocaine transaction between Woods and Carlton on November 16, 2004—corroborates Woods' statements that Otero was involved in the conspiracy. In light of the totality of the circumstances, Carlton's affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search of Otero's apartment would uncover evidence of a crime. *See Peck*, 317 F.3d at 755-56.

Moreover, even if probable cause was lacking, Otero has failed to meet his burden of demonstrating that the good-faith exception of *United States v. Leon*, 468 U.S. 897, 104

---

[1] Over a month after Woods' arrest and the issuance of the search warrant, Woods confessed that it was Cabrera (and not Otero) who had provided him with the cocaine that he had sold on November 19. However, this inconsistency is not relevant to the probable cause determination. Because Carlton's affidavit was the only evidence presented to the magistrate judge on November 19, "the warrant must stand or fall solely on the contents of the affidavit." *See Koerth*, 312 F.3d at 866 (*quoting United States v. Roth*, 391 F.2d 507, 509 (7th Cir. 1967)).

S. Ct. 3405, 82 L. Ed. 2d 677 (1984), should not apply here. In *Leon*, the Supreme Court held that evidence seized pursuant to a subsequently invalidated search warrant need not be suppressed if the officers relied in good faith on the magistrate judge's issuance of the warrant. *Leon*, 468 U.S. at 924. An officer's decision to obtain a warrant is *prima facie* evidence that he or she was acting in good faith. *United States v. Mykytiuk*, 402 F.3d 773, 777 (7th Cir. 2005). A defendant can rebut the presumption of good faith only by showing that the judge issuing the warrant abandoned his/her detached and neutral role, the officers were dishonest or reckless in preparing the affidavit, or the warrant was so lacking in probable cause as to render the officer's belief in its existence entirely unreasonable. *Peck*, 317 F.3d at 757; *Leon*, 468 U.S. at 923.

Otero does not suggest that the magistrate judge simply rubber-stamped the application in issuing the search warrant. Instead, he argues that Carlton could not have harbored an objectively reasonable belief that there was probable cause to search Otero's residence. In support of this argument, Otero contends that Carlton acted recklessly in preparing an affidavit containing inconsistent statements. We disagree with Otero's contention that Woods' pre-arrest and post-arrest statements are contradictory.

Although Woods told Carlton that he would not travel to Wisconsin to deliver the cocaine due to his November 16 run-in with the Kenosha police, he did not tell Carlton that he would never travel to Kenosha for any reason. Woods' pre-arrest statements did not preclude the possibility of him traveling to Kenosha the morning of November 19 to pick up cocaine from Otero, and, after his arrest, that is precisely what Woods told Carlton he had done. Carlton had no reason to believe that Woods was being untruthful when he identified Otero as his supplier and there is no evidence in the record to suggest that Carlton knew that

Woods' statement was false when the warrant was issued. The warrant was obtained and relied upon in good faith.

### B.  Otero's Sentence

Otero also asserts that the district court erred in determining his sentence. Otero was convicted of both conspiracy to distribute at least 500 grams of cocaine (count one) and maintaining a drug-trafficking place (count three). The district court sentenced Otero to 300 months' imprisonment as to each count, with the sentences to run concurrently. Under 21 U.S.C. § 856(b), any person who violates § 856(a) shall be sentenced to a term of imprisonment not more than twenty years. Given the statutory maximum, the district court erred in sentencing Otero to a term of imprisonment exceeding twenty years on count three. We vacate Otero's sentence as to count three and remand for re-sentencing on this count.

### C.  Venue Instruction at Woods' Trial

Woods begins his appeal by arguing that it was error for the district court to give a jury instruction that only required the government to prove by a preponderance of the evidence that venue existed in the Eastern District of Wisconsin. He argues that "[t]he Seventh Circuit employs a standard of beyond a reasonable doubt in proving venue." In *United States v. Canino*, 949 F.2d 928 (7th Cir. 1991), we rejected a similar argument and reiterated that "the law of this circuit is that venue is shown by a preponderance of the evidence, which may include inferences drawn from circumstantial evidence." *Canino*, 949 F.2d at 942 (citations omitted). The district court's venue instruction was correct.

**D. Woods' Sentence**

After the conviction, the probation officer prepared Woods' pre-sentence report ("PSR"). Because the PSR characterized Woods as a career offender, his base offense level increased from 24 to 34 and he received a criminal history category of VI. This resulted in a sentencing range of 262 to 327 months of imprisonment. Woods filed two objections to the PSR, arguing that he was entitled to an adjustment for acceptance of responsibility and that he was not a career offender.

Before Woods' sentencing hearing, Sean Smoker, a federal inmate and con artist serving a sentence for fraudulent use of a social security number, sent a letter to his own sentencing judge claiming that Woods had threatened the life of a federal prosecutor.[2] During an investigation of the death threat, another inmate told an FBI investigator that he had overheard Woods say that he was planning to stab his prosecutor with a pen.

At sentencing, the district court rejected Woods' objections and found that the sentencing range calculated in the PSR was correct. In assessing Woods' history and characteristics, the district court took into consideration the information provided by Smoker. The district court

---

[2] In the letter, Smoker claimed that Woods had asked him how sentencing worked and where people sit during sentencing. The letter explained that Woods told Smoker that he had no intention of serving 25 years in prison and therefore intended to get the death penalty by killing his prosecutor. Smoker claimed that Woods told him that he planned to "grab his attorney's pen and . . . stick the pen through [the prosecutor's] nose into her brain" during sentencing. Additionally, Smoker claimed that Woods told him that "if he couldn't get to the prosecutor during his sentencing, he would use his outside contacts to get to [the prosecutor's] family."

concluded that the seriousness of the offense and the history and characteristics of Woods warranted a term of 300 months' imprisonment. Woods now argues that the district court erred in denying him acceptance of responsibility and in determining that he qualified as a career offender. He also contends that the court abused its discretion in considering the hearsay evidence from Smoker in assessing Woods' history and characteristics and that his background and his role in the offense did not justify his sentence.

### 1.   Acceptance of Responsibility

Despite proceeding to trial, Woods argues that he is entitled to sentencing credit for acceptance of responsibility because he cooperated with law enforcement after his arrest. An acceptance of responsibility determination is a factual finding that we review for clear error. *United States v. Leahy*, 464 F.3d 773, 790 (7th Cir. 2006) (citations omitted). United States Sentencing Guideline ("U.S.S.G.") § 3E1.1(a) provides that a court is to give a two-point reduction if the defendant "clearly demonstrates acceptance of responsibility for his offense." Woods' actions clearly demonstrate that he did not accept responsibility for his offense.

Although Woods cooperated with authorities immediately after his arrest, the government later discovered that Woods had lied to them about the source of the drugs. Additionally, Woods refused to cooperate with prosecutors during Otero's trial, declined to accept responsibility during the preparation of his pre-sentence report, and ultimately, he proceeded to trial and contested his guilt. Because Woods failed to accept responsibility for his offense, the district court did not err in denying Woods a sentencing reduction pursuant to U.S.S.G. § 3E1.1.

### 2. Career Offender

Woods next argues that the district court erred in determining that he qualified as a career offender under U.S.S.G. § 4B1.1. Whether the district court erred in sentencing Woods as a career offender is a question of law that this court reviews *de novo*. *United States v. Kindle*, 453 F.3d 438, 440 (7th Cir. 2006). Under the Guidelines, a defendant qualifies as a career offender if three criteria are met: (1) the defendant is over 18 at the time he committed the instant offense; (2) the instant offense is a felony that constitutes either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions for either crimes of violence or controlled substance offenses. *See* U.S.S.G. § 4B1.1.

Here, the first two elements are not in dispute: Woods was over 18 years old when he committed the instant offense and the instant offense qualifies as a controlled substance offense. With respect to the third element, Woods' PSR indicates that he has had several prior convictions, including strong-armed battery in November of 1990, battery to a jailer with a weapon in April of 1993, and battery to a jailer in September of 1993. Woods concedes that his April 1998 battery qualifies as a violent felony, and the district court found that his strong-armed robbery conviction also qualifies as such.

Woods argues, however, that the robbery does not constitute a "crime of violence," and that because he was a minor at the time of this offense, the robbery does not meet the definition of "prior felony conviction." We disagree.

The Guidelines define a "crime of violence" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year that (1) *has as an element the use, attempted use, or threatened*

*use of physical force against the person of another*; or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a) (emphasis added). In 1990, Woods was convicted of violating Wis. Stat. § 943.32(1)(a), which has as a necessary element the use of force against a victim.[3] Additionally, robbery is one of the offenses specifically enumerated as being a "crime of violence" for purposes of U.S.S.G. § 4B1.2(a). See Application Note 1 ("'Crime of violence' includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling."). Furthermore, while it is true that Woods was 17 when he committed the robbery, the offense may be counted for career offender purposes because Woods' robbery conviction was classified as an adult conviction in Wisconsin. *See* U.S.S.G. § 4B1.2(a), Application Note 1 ("A conviction for an offense committed prior to age eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted.") Given that a robbery is enumerated as a "crime of violence" under the Guidelines and Woods' conviction for strong-armed robbery was classified as an adult conviction, the district court did not err in finding that Wood qualified as a career offender.[4]

---

[3]  Under Wisconsin Statute § 943.32, "(1) Whoever, with intent to steal, takes property from the person or presence of the owner by . . . the following means is guilty of a Class E felony: (a) By using force against the person of the owner with intent to overcome his or her physical resistance or physical power of resistence to taking or carrying away of the property . . . ."

[4]  For the first time on appeal, Woods argues that he is entitled to a reduction in his offense level for being a minor participant

(continued...)

### 3. Reasonableness of Sentence

Finally, Woods argues that his sentence was "oppressive," arguing that his background and his role in the offense did not justify 300 months' imprisonment. Following *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), we review sentences for reasonableness. A sentence within a properly calculated Guidelines range is presumptively reasonable, see *Rita v. United States*, No. 06-5754, 2007 WL 1772146 (June 21, 2007), and we review the district court's decision deferentially. *Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). Although a sentence within the Guidelines range will rarely be unreasonable, a defendant can rebut the presumption by showing that the sentence is unreasonable in light of the factors listed in 18 U.S.C. § 3553(a). *Id.*

Here, the district court judge correctly calculated Woods' advisory Guidelines range. The district court then considered the § 3553(a) factors and identified the factors that he was taking into consideration in determining Woods' sentence. First, the district court addressed the gravity of Woods' offense, commenting on the negative economic, social and personal effects associated with cocaine-trafficking. The district court then analyzed Woods' history and characteristics, noting a past replete with all sorts of combative, assaultive behavior and a personality characterized by hatred and anger. In assessing Woods' history and characteristics, the district court also took into consideration the death threat evidence offered by

---

[4] (...continued)
in the criminal conspiracy. Because Woods was sentenced as a career offender, minimal and minor role reductions under § 3B1.2 do not apply. *See United States v. Ward*, 144 F.3d 1024, 1036-37 (7th Cir. 1998).

Smoker.[5] Finally, the district court explained the need to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides uniform punishment. Because the district court gave meaningful consideration to the § 3553(a) factors, chose a sentence within a properly calculated Guidelines range, and explained its reasoning for sentencing Woods to 300 months' imprisonment, we find that Woods' sentence is reasonable.

### III. Conclusion

For the foregoing reasons, the decision of the district court is affirmed in part and vacated and remanded in part.

ROVNER, *Circuit Judge*, concurring.   After receiving information about Otero from the recently arrested Woods and Cabrera, the officers did literally nothing to corrobo-

---

[5]  Woods argues that the district court should not have considered the hearsay evidence from Smoker in assessing his history and characteristics. We disagree. At sentencing, a district court may consider evidence that is not otherwise admissible, including hearsay, so long as it possesses "sufficient indicia of reliability to support its probable accuracy." *See United States v. Johnson*, 227 F.3d 807, 813 (7th Cir. 2000); U.S.S.G. § 6A1.3(a). Here, the hearsay evidence possessed sufficient indicia of reliability because Smoker's account was corroborated by another inmate, who told investigators that he had overheard Woods' death threat.

rate any of that information. They did not check into Otero's criminal record. They did not check to see whether someone named Otero lived at the address given by Woods. Woods told the officers that Otero hid the drugs in his bedroom or in the detached garage. The garage was not detached, but the officers failed to verify even this detail, which would have been readily discernable. There were obvious credibility problems with Woods, an unproven informant who had just been arrested and had previously told the officers he refused to travel to Wisconsin, now claiming that he procured the drugs from Otero in Wisconsin that same day. There is nothing in the affidavit that compensates for the lack of independent police corroboration. The level of detail Woods provided is irrelevant if the officers did nothing to verify the accuracy of any of those details. I would find that there was insufficient evidence to support a finding of probable cause. *See United States v. Peck*, 317 F.3d 754, 756-57 (7th Cir. 2003). However, because I agree with my colleagues that the *Leon* good faith exception applies, I concur in the majority's judgment affirming the district court's denial of the motion to suppress. Excepting the discussion of probable cause, I concur in the majority's opinion in every other respect.

A true Copy:

     Teste:

 

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*

USCA-02-C-0072—7-19-07