NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued April 3, 2008
Decided September 26, 2008

**Before**

JOEL M. FLAUM,  *Circuit Judge*

DANIEL A. MANION,  *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

| | |
|---|---|
| No. 07-2827 | Appeal from the United States District Court for the Northern District of Illinois, Western Division. |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | |
| | No. 05 CR 50085 |
| *v.* | |
| | **Philip G. Reinhard**, *Judge*. |
| DAVID HEWELT, *Defendant-Appellant*. | |

**O R D E R**

David Hewelt pleaded guilty to distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). The district court sentenced Hewelt to 151 months' imprisonment (the low end of the advisory guideline range of 151 - 188 months), rejecting Hewelt's request for a below-guideline sentence of sixty months'

imprisonment (the mandatory minimum). Hewelt appeals, arguing that the district court's sentence was unreasonable. We affirm.

I.

On December 13, 2005, the government indicted David Hewelt in a two-count indictment. Count I charged Hewelt with distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A), and Count II charged him with possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Hewelt entered into a written plea agreement under which he pleaded guilty to Count I and Count II was dismissed. The case was then set for sentencing.

The Presentence Report ("PSR") prepared for sentencing detailed Hewelt's offense conduct as having posted a movie depicting child pornography on an Internet newsgroup. Specifically, the PSR stated that on October 26, 2005, Hewelt split a video file named "baby_j_standin_up.mpg" into six parts and posted the six parts to the newsgroup, knowing that any Internet user could take possession of the video by downloading a copy of it from the Internet. The PSR also stated that Hewelt had a collection of child pornography estimated to include thousands of images, including images of prepubescent minors and sadomasochistic and violent conduct of a sexual nature directed towards children. Further, the PSR specified that during a search of Hewelt's home "numerous printed images of child pornography, several framed images of child pornography, numerous hand drawings simulating child pornography and violence/torture, and numerous items utilized for self-mutilation and/or torture" were recovered.

Based on the above information, the PSR established a base offense level of 22. The base offense level was increased two levels because the pornographic material involved a prepubescent minor or a minor under the age of twelve, and an additional two levels because the offense involved distribution to others. The PSR further raised the offense level four levels because the material portrayed sadistic or masochistic conduct or other depictions of violence, two levels because a computer was used for the distribution of the material, and five levels because the offense involved 600 or more images. Following a three-level reduction for acceptance of responsibility, the offense level totaled 34. The PSR also determined that Hewelt had a criminal history of zero, placing him in the criminal history category of I and resulting in an advisory guideline range of 151 - 188 months' imprisonment.

The PSR also summarized Hewelt's mental and emotional health based on a report and supplemental report prepared by Alliance Counseling Services and oral statements made to the probation officer by Brian Smith (one of the authors of the reports). Because of the significance of the Alliance Reports to the issues on appeal, we excerpt from those at length below.

In its initial report, dated November 27, 2006, Alliance diagnosed Hewelt, based on the DSM-IV (Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition) criteria, with "Pedophilia, Sexually Attracted to Males and Females, Non-Exclusive Type." The Alliance Report then explained what it meant to be diagnosed as a pedophile, i.e., a paraphiliac focus on "sexual activity with a prepubescent child (generally age 13 years or younger)." The Alliance Report also explained that "[s]ome individual prefer males, others females, and some are aroused by both males and females." The report continued: "Some individuals with Pedophilia are sexually attracted only to children (Exclusive Type), whereas others are sometimes attracted to adults (Nonexclusive Type)." The report further explained: "The course [of pedophilia] is usually chronic, especially in those attracted to males. The recidivism rate for individuals with Pedophilia involving a preference for males is roughly twice that for those who prefer females."

The report applied these general principles to Hewelt. It stated that Hewelt met the diagnosis for "Pedophilia, Sexually Attracted to Males and Females, Non-Exclusive Type" because of 35 years of "recurrent, intense sexually arousing fantasies, sexual urges, and behaviors involving sexual activity with a prepubescent child or children." The "Clinical Summary and Recommendations" section of the Alliance Report provided the following additional summary:

> Hewelt presents with a significant, if not primary pedophiliac attraction for prepubescent boys and girls. Further, it would appear that Mr. Hewelt has reinforced these sexual attractions and urges through years worth of engagement in fantasy, pornography, and masturbation. Finally, there is an intense compulsive quality to his sexual behaviors through which Mr. Hewelt appeared to seek increasingly risky and intense sexual experience . . . .

The report then summarized the results of three actuarial risk assessments, noting that on "[t]he Rapid Risk Assessment for Sexual Offense Recidivism (RRASOR),

Mr. Hewelt's estimated recidivism rate was 7.6% within five years, and 11.2% within ten years." According to the report, "[t]he second assessment, the Static-99 yielded a risk category of low given Mr. Hewelt'[s] history." And "[f]inally, Mr. Hewelt was assessed as low risk on the VASOR." Nonetheless, the report concluded that:

> Mr. Hewelt is viewed as a poor candidate for outpatient specialized sexual offender treatment services and management in the community via the containment approach.  Mr. Hewelt's prognosis for significant changes in thoughts, attitudes and behaviors through specialized outpatient sexual offender treatment is viewed as poor.  As was noted above from the DSM-IV diagnostic criteria, the course for individuals diagnosed with pedophilia is usually chronic, especially in those attracted to males.  The recidivism rate for individuals with Pedophilia involving a preference for males is roughly twice that for those who prefer females.  No further treatment services are recommended for Mr. Hewelt. There is no known community based intervention suitable to address the needs presented by Mr. Hewelt or to further reduce the risk which he poses.

On February 7, 2007, Alliance provided a Supplemental Report.  The Supplemental Report was needed because, while multiple requests were made to Hewelt's attorney to obtain records concerning the allegations of the offense, no information was provided to Alliance and thus the initial report was "based upon what was presented by Mr. Hewelt."  The Supplemental Report provided additional conclusions, following Alliance's review of 150 pages of discovery material, including police reports and criminal history information. The Supplemental Report noted that "the records served to further support [the original] diagnosis which was . . . Pedophilia, Sexually Attracted To Males and Females, Non-Exclusive Type."

The Supplemental Report then expanded on the earlier report, stating:

Mr. Hewelt has consistently denied any hands on offenses in his background both during the course of our evaluation as well as in the discovery materials. However, it is important to note the relative extent and seriousness of the items which were seized from Mr. Hewelt's home as they appear to be indicative of a rather ingrained pattern of problematic behavior.  Mr. Hewelt presents with characteristics consistent with individuals who utilize computers and the internet

as a component of their sexual offense cycle.  As is consistent with Mr. Hewelt, these individuals often present with a sexual attraction for pre-pubescent children, report experiencing extreme social isolation and significant deficits in their ability to interact with others, utilize the computer to communicate with others, and possess many tools (i.e., computers, digital cameras) for securing and transmitting photos and images involving children.  Additionally, these individuals possess extensive amounts of child pornography and erotica . . . .

Mr. Hewelt also reflects the cognitive distortions consistent with individuals in these cases wherein he views his "crime" as one which he commits against himself.  Therefore, the down-loading, transmitting and use of pornographic and sadistic images involving children are viewed by Mr. Hewelt as a "victim-less" crime.  He would consider it to be an extension of something which is wrong with him as opposed to resulting from the direct or indirect exploitation of a child.  Additionally, many individuals in these circumstances utilize the fact that they have not had a hands-on offense to justify their ongoing and expanding use of pornography and erotica.  Unfortunately this is often a part of the individual's sexual offense cycle which culminates in actively attempting to solicit and seduce youth via the internet.

The Supplemental Report further reiterated that while "three actuarial risk assessments indicated that Mr. Hewelt presented with a low risk category for re-offense," "there is no known community based intervention suitable to address the needs presented by Mr. Hewelt or to further reduce the risk which he poses." Rather, according to the Supplemental Report, "Hewelt is viewed as a poor candidate for outpatient specialized sexual offender treatment services and management in the community via the containment approach.  Mr. Hewelt's prognosis for significant changes in urges, thoughts, attitudes and behaviors through specialized outpatient sexual offender treatment is viewed as poor." The Supplemental Report then concluded that "the recommendations offered in our original report remain unchanged in light of the information which was presented by your office."

At sentencing, Hewelt argued that based on the § 3553 sentencing factors he should be sentenced below the advisory guidelines range and argued for a sentence of 60 months (the mandatory minimum).  Hewelt sought a reduced sentence based on many factors, which his attorney claimed distinguished Hewelt from the average

defendant.  First, Hewelt's attorney stressed that Hewelt is 62 years old and had no prior criminal history.  He added that given Hewelt's health problems—he was badly burned all over his body and severely injured in a car accident—any sentence above the mandatory minimum was likely to be very close to a life sentence.  His attorney further stressed Hewelt's strong work history, responsible payment of child support, and his service in the military and honorable discharge.  Additionally, Hewelt's attorney noted that Hewelt's adoptive family had a stern nature and that Hewelt was sexually abused at age nine.  Finally, his attorney highlighted the fact that Hewelt, on his own initiative, had sought counseling after his arrest and argued that Hewelt had a low risk of recidivism.

The district court rejected Hewelt's request for a below-guidelines sentence.  In doing so, the court noted that it had "read, in particular, the two reports that have been submitted by Alliance Counseling Services," and that it had "considered the arguments and statements that have been made." The district court then explained its reasoning, stating:

> [Hewelt's attorney] has appropriately cited to the statutory factors in 3553(a).  In looking at those, I just want to point out that the nature and circumstances of the offense are serious.  Both the amount and the type of pornography are particularly distressing to the court, and that's what the statute, in providing the guidelines, was to get at, looking at the quantity and the type and the method used.

> In his favor, I don't find any evidence in all the reports that he has harmed or even attempted to harm or entice any minor into this type of posing for pornographic images, but the offense is very serious.  What he has going for him, I suppose, in terms of a downward departure would be, as counsel points out, his life expectancy, which I am considering, the fact of no criminal history.  He does have health problems that I have looked at, and I've looked at the fact that he's worked all his life and been in the Armed Forces and served the country.

> I guess of primary concern along with those is I have an obligation to protect the public from further crimes of the defendant, and that's what poses the greatest problem for me, I think, and it's why we have to go on why the guidelines were fashioned the way they were.  But, more importantly, as far as I'm concerned, it

would be the diagnosis and the prognosis in the various reports by Alliance Counseling Services, and their opinion is that he has pedophilia. He's chronic. He's attracted to both males and females. And the recidivism is high if he's attracted to males, which is the case, and that there's no type of guarantee in any way that we can change him or effectively monitor him on an outpatient basis. That is, that's poor.

I want to say this, that when he's appeared before me, he's been open, he's been frank, he's been polite. It makes a sentencing determination very difficult when I have somebody who is up in age and who also is a person who has no prior record and who has the concerns that [Hewelt's attorney] has outlined.

My focus in all that is, you know, are you going to do it—what's going to happen when you get out. If I were to let you out in 60 months or 70 months, which is short of the advisory guideline range, is there any indication that you might do this—you might act out against people. You promised me you wouldn't, but those who are experts in the field say that there's no telling what can happen.

The court added:

I think there has now been a recognition of how bad, number one, it can be, but secondly, how this could be progressive. That is, before you were arrested, the images you saw I think progressively got worse. . . You had to have violence in those, and it's something that's very difficult to stop. . . . And were there any way that I could put somebody—put wherever you—to let you out in five, six years and I could put a television camera beside you and watch you all the time, I'd have a lot more confidence in what—that you wouldn't do anything. But given the experts', so-called experts['], opinions, it's very difficult for me to say that I should overlook that and should just be lenient.

And, believe me, in all my dealing with you and through [your attorney] representing you, I think you'd make [your] very best effort not to revert back to anything that might endanger somebody else, but I can't say with any degree of confidence that the impulses would not overcome that, and I think age is about the only thing that will be a guarantee that once you do get out that you'll be old enough that there won't be that stimulation.

The district court then concluded: "I am for all those reasons denying the motion for a downward variance. I am going to sentence you at the low end of the guideline range to 151 months in the Bureau of Prisons."

II.

Hewelt appeals the district court's sentence of 151 months, arguing that the court erred in refusing to sentence him below the guideline range. This court reviews a sentence for reasonableness. A sentence within the guideline range is presumptively reasonable on appeal. *See Rita v. United States*, 127 S.Ct. 2456, 2462 (2007). Rarely will a sentence that is properly calculated under the guidelines be judged unreasonable on appeal. *See United States v. Otero*, 495 F.3d 393, 402 (7th Cir. 2007). Accordingly, the district court's choice of a sentence is subject to only "light appellate review," *United States v. Demaree*, 459 F.3d 791, 795 (7th Cir. 2006), and this review "merely asks whether the trial court abused its discretion." *Rita*, 127 S.Ct. at 2465. Further, "[w]e review the district court's factual determinations with respect to sentencing for clear error." *United States v. Santiago*, 495 F.3d 820, 824 (7th Cir. 2007).

On appeal, Hewelt argues that the district court abused its discretion in assessing the 151-month sentence because it based its sentence on clearly erroneous facts. Specifically, Hewelt claims that "[t]he district court erred in concluding that Hewelt had a risk of committing a sex offense other than the voyeuristic type of which he was convicted." Appellant Brief at 14. In support of his position, Hewelt points to the Alliance Counseling Service Reports and the PSR, stressing that neither indicated that he had ever acted out towards other people.

While it is true that there is no evidence that Hewelt had ever acted out, the Alliance Report concluded that "there is an intense compulsive quality to his sexual behaviors through which Mr. Hewelt appeared to seek increasingly risky and intense sexual experience . . . ." Further, the Alliance Report explained that "Hewelt presents with characteristics consistent with individuals who utilize computers and the internet as a component of their sexual offense cycle." Specifically, the Alliance Report noted that "many individuals in these circumstances utilize the fact that they have not had a hands-on offense to justify their ongoing and expanding use of pornography and erotica. Unfortunately this is often a part of the individual's sexual offense cycle which culminates in actively attempting to solicit and seduce youth via the internet." From these passages, the district court could have reasonably concluded that Hewelt posed a

danger of acting out in the future and its finding in this regard was not clearly erroneous.

Hewelt also argues that the district court erred in concluding that Hewelt had a heightened risk of recidivism. In support of his position, Hewelt points to three different tests which were used to measure Hewelt's recidivism, and they indicated a low rate of recidivism. However, Hewelt ignores the Alliance Report's conclusion that he was "viewed as a poor candidate for outpatient specialized sexual offender treatment services and management in the community via the containment approach." The Alliance Report further noted that "Hewelt's prognosis for significant changes in urges, thoughts, attitudes and behaviors through specialized outpatient sexual offender treatment is viewed as poor," based in part on "the presence of sadistic and masochistic urges and behaviors which appear to be chronic and ingrained." Thus, although Hewelt scored low on the tests used to measure recidivism, the Alliance Report supports the district court's finding that he had a heightened risk of recidivism.

Hewelt also argues that the district court committed error when it "said he had double the risk of recidivism because he was attracted to boys." Appellant Brief at 14. Hewelt claims that the district court made this finding based on its misreading of the following passage in the Alliance Report: "The recidivism rate for individuals with Pedophilia involving a preference for males is roughly twice that for those who prefer females." Hewelt then points out that the Alliance Report had diagnosed him as having "Pedophilia, Sexually Attracted to Males and Females." Hewelt reasons that because he is attracted to both boys and girls, he does not have a "preference" for males and consequentially does not have double the risk of recidivism.

However, contrary to Hewelt's assertion, the district court did not find that he had "double the risk of recidivism." Rather, the district court found that Hewelt was "chronic. He's attracted to both males and females. And the recidivism is high if he's attracted to males, which is the case, and that there's no type of guarantee in any way that we can change him or effectively monitor him on an outpatient basis." The Alliance Report supports the view that his recidivism rate is high because he is attracted to males, stating: "The course is usually chronic, especially in those attracted to males." Hewelt is attracted to males. He is also attracted to females, but that does not alter the Alliance Report's position that those attracted to males are even more likely to suffer from chronic pedophilia.

Moreover, even if the district court erred in finding that Hewelt had a high rate of recidivism because he is attracted to males,[1] this error was harmless because the district court had several other bases for concluding that Hewelt had a high rate of recidivism. An error is harmless if it "did not affect the district court's selection of the sentence imposed." *Williams v. United States*, 503 U.S. 193, 203 (1992). In sentencing Hewelt, the district court stressed that it had "read, in particular, the two reports that have been submitted by Alliance Counseling Services." The extensive excerpts from the Alliance Report and Supplemental Report detailing Hewelt's progressive condition, the seriousness and violence of the pornography, and the risk he presents to the public concluded that there was no treatment option for Hewelt. The excerpts from the sentencing hearing show that the district court relied on this conclusion and the other details contained in the Alliance Reports in sentencing Hewelt to 151 months' imprisonment. The transcript from the sentencing hearing further demonstrates that the district court would have sentenced Hewelt to the same term, without regard to any error, as the district court made clear that it believed the 151-month sentence was necessary given the seriousness of Hewelt's offense, the progressively violent nature of the pornography, the compulsive nature of Hewelt's behavior, and the need to protect the public. Accordingly, any error was harmless. *See, e.g., United States v. Spano*, 476 F.3d 476, 480-81 (7th Cir. 2007) (holding that the district court's error was harmless because "[t]he judge has made abundantly and persuasively clear why he thinks a guidelines sentence made without consideration of [the erroneous finding]" was appropriate); *United States v. Walker*, 98 F.3d 944, 948 (7th Cir. 1996) (holding that the sentencing error in considering arrests was harmless given the judge's strong remarks about the number of the defendant's convictions).

Finally, Hewelt argues that the district court "gave little or no attention to the section 3553(a) factors that must be weighed in the balance," such as Hewelt's age, health problems, the lack of a criminal record, his strong work record, responsible payment of child support, and service in the military and honorable discharge. Additionally, Hewelt's attorney points out that Hewelt's adoptive family had a stern nature and that Hewelt was sexually abused at age nine. However, as the excerpts from the sentencing hearing demonstrate, the district court fully considered the § 3553(a)

---

[1] Any error by the district court would not be surprising given that during the sentencing hearing Hewelt's own attorney noted that the report "say[s] where people were attracted to boys, you can double it . . . . " Sentencing Transcript at 9.

factors, including the factors favoring Hewelt. In the final analysis, though, given the extensive amount of violent child pornography and the escalating nature of Hewelt's conduct, the district court concluded that the risk to children was too high to reduce Hewelt's sentence below the guideline range. This conclusion was well within the district court's discretion. *See United States v. Allday*, 2008 WL 4085484 (7th Cir. 2008) (holding that the district court did not err in refusing to sentence the defendant below the guideline range, notwithstanding the defendant's age, health condition, first-time-offender status, solid work history and military service, given the amount of child pornography the defendant had amassed and the need to deter such conduct).

III.

The district court sentenced Hewelt to 151 months' imprisonment, a sentence within the guideline range and therefore presumptively reasonable. The district court fully considered the § 3553(a) factors. The district court also did not clearly err in finding that Hewelt had a high recidivism risk and a risk of progressing to physical offenses, or at a minimum, any error was harmless. Accordingly, we AFFIRM.