**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 8, 2009
Decided August 6, 2009

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 08-3284

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 07 CR 228-2 |
| ANTONIO LOPEZ-POPOCA, *Defendant-Appellee*. | William J. Hibbler, *Judge*. |

O R D E R

Antonio Lopez-Popoca pleaded guilty to conspiracy to possess and distribute cocaine and heroin in violation of 21 U.S.C. §§ 846, 841(a)(1) and was sentenced to 188 months' imprisonment. Over Lopez-Popoca's objection, the district court found that he was a manager or supervisor for purposes of U.S.S.G. § 3B1.1(b) and thus that his base offense level had to be increased by three. Lopez-Popoca challenges that decision on appeal. We conclude, however, that the district court did not clearly err in this respect and thus affirm the sentence.

# I

In his plea agreement, Lopez-Popoca admitted that he conspired with German Pasion-Rios, Ricardo Delgado-Acasio, two government informants (designated as Individuals A and B), and two unnamed Mexican suppliers to distribute cocaine and heroin. Typically, the suppliers would front cocaine and heroin to Lopez-Popoca. His two co-defendants, Pasion-Rios and Delgado-Acasio, helped him by receiving the drugs at his stash house and preparing them for resale. Lopez-Popoca would then distribute the drugs (again on credit) to Individuals A and B, who sold them to final consumers. At some point, Individuals A and B began cooperating with the government.

Based on quantities of drugs alone, Lopez-Popoca was facing a mandatory statutory minimum of ten years. He hoped that he would be eligible for the safety valve provided in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, which permits the sentencing judge to impose "a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence." U.S.S.G. § 5C1.2(a). A safety-valve sentence, however, is not available for a person who was "an organizer, leader, manager, or supervisor of others in the offense." *Id.* at § 5C1.2(a)(4); see also § 3B1.1(a), (b). The sentencing hearing thus focused on the question whether the facts supported a finding that Lopez-Popoca played a supervisory role. More particularly, it focused on the relationship between Lopez-Popoca, on the one hand, and Pasion-Rios and Delgado-Acasia, on the other. Including them raised the number involved in his crimes to five (the necessary number under § 3B1.1(b)); if in addition he managed or supervised them, he would not be eligible for the safety valve.

In its presentence report, the probation officer declined to apply the manager/supervisor adjustment to Lopez-Popoca because there was nothing to indicate whether Pasion-Rios and Delgado-Acasio were working for Lopez-Popoca, for themselves, or for another person. In response, the government supplemented the report with Delgado-Acasio's plea agreement and Pasion-Rios's plea agreement and safety-valve proffer. In his plea agreement, Delgado-Acasio said that he worked for Lopez-Popoca. In addition, the government introduced "DEA-6" forms memorializing Pasion-Rios's proffer in conjunction with his own efforts to obtain "safety-valve" treatment. According to that record, Pasion-Rios stated that he worked for Lopez-Popoca, he received and paid for drug shipments from the suppliers, he packaged the drugs for resale, delivered drugs to customers, and he accepted payments from customers on behalf of Lopez-Popoca. Instead of keeping customers' payments, he turned over the proceeds to Lopez-Popoca, who paid him a salary.

After considering the additional evidence, the district court found that "the other two defendants [Pasion-Rios and Delgado-Acasio] really took their marching orders from

the defendant," and that Lopez-Popoca was their supervisor. Including the suppliers, but excluding the government informants, see U.S.S.G. § 3B1.1 cmt. n.1, the court determined that there were five members of the conspiracy and therefore, as a manager, Lopez-Popoca deserved the three-level adjustment under U.S.S.G. § 3B1.1(b). This meant that Lopez-Popoca was ineligible for a safety valve reduction. Lopez-Popoca's adjusted offense level of 36 and criminal history category I yielded a guidelines imprisonment range of 188 to 235 months. The court sentenced Lopez-Popoca to 188 months' imprisonment (well above the statutory minimum of 120 months).

## II

On appeal, Lopez-Popoca argues only that the district court erred in concluding that he managed or supervised another participant in the drug distribution conspiracy. He contends that Pasion-Rios's statements in his plea agreement and proffer are conclusory and unsupported by other evidence. He also complains that the hearsay statements considered by the court (including those in Delgado-Acasio's DEA-6 forms) were unreliable. This court evaluates the district court's determination that a defendant played a supervisory or managerial role for clear error. *United States v. Pira*, 535 F.3d 724, 730 (7th Cir.), *cert. denied*, 129 S. Ct. 583 (2008).

Viewed together, the plea agreements of Lopez-Popoca, Delgado-Acasio, and Pasion-Rios, along with Pasion-Rios's proffer, support the conclusion that Lopez-Popoca supervised Pasion-Rios and Delgado-Acasio. He directed them to receive, package, and sell drugs on his behalf. The proceeds went to Lopez-Popoca, and he then paid a salary to his assistants. Lopez-Popoca's own plea agreement admits that Pasion-Rios and Delgado-Acasio "assisted defendant by receiving the narcotics on defendant's behalf and preparing it for resale to defendant's customers." Admissions in a plea agreement are conclusive. *United States v. Krasinski*, 545 F.3d 546, 552 (7th Cir. 2008). Although the probation officer thought that Lopez-Popoca's plea agreement did not unambiguously demonstrate that Pasion-Rios and Delgado-Acasio worked at the direction of Lopez-Popoca, the statements from his co-defendants resolve any question: they both declared that they worked for Lopez-Popoca.

Lopez-Popoca challenges the court's reliance on Pasion-Rios's statements because they are conclusory and contain hearsay, but at sentencing a court may consider otherwise inadmissible evidence, including hearsay, provided that it bears "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a); *United States v. Otero*, 495 F.3d 393, 402 n.5 (7th Cir.), *cert. denied*, 128 S. Ct. 425 (2007). And, although the court was

not required to credit any of these statements as true, see U.S.S.G. § 6B1.4(d); *United States v. Forman*, 553 F.3d 585, 590 (7th Cir.), *cert. denied sub nom. McKnight v. United States*, 129 S. Ct. 1924 (2009), *and petition for cert. filed*, No. 08-10436 (U.S. Apr. 3, 2009), it is almost impossible to attack a credibility determination as clearly erroneous.  See *United States v. Clark*, 538 F.3d 803, 813 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 1613 (2009).  Lopez-Popoca insists that "a fairer reading of the evidence" could show that Pasion-Rios and Delgado-Acasio were "independent contractors," but that is not the question: he had to show that the only possible conclusion from the evidence is that they were independent, and he has not done so. If two possible conclusions can be drawn from the evidence then the choice between them cannot be clearly erroneous.  See *United States v. Hatten-Lubick*, 525 F.3d 575, 580 (7th Cir. 2008).

Lopez-Popoca also argues that a supervisor designation is inappropriate because the record does not support all of the factors listed in the guidelines. Although the guidelines do not define "manager" or "supervisor," the application note identifies seven relevant factors: (1) the exercise of decision-making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning and organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others.  U.S.S.G. § 3B1.1 cmt. n.4; *United States v. Howell*, 527 F.3d 646, 649 (7th Cir. 2008).  But no single factor is a prerequisite to the enhancement, and the factors are not necessarily entitled to equal weight. *United States v. Wasz*, 450 F.3d 720, 729 (7th Cir. 2006). Here, the evidence easily supported the court's finding that Lopez-Popoca directed Pasion-Rios and Delgado-Acasio, claimed a larger share of the proceeds, and was the one who negotiated with the suppliers regarding pricing and delivery details. This was sufficient to support his designation as a manager or supervisor.

Because the district court did not clearly err in concluding that Lopez-Popoca played a managerial or supervisory role, we **AFFIRM** the sentence.