In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-2429

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

SEAN A. PECK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 02-CR-20005—**Michael P. McCuskey**, *Judge.*

ARGUED DECEMBER 4, 2002—DECIDED JANUARY 29, 2003

Before FLAUM, *Chief Judge*, and COFFEY and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Sean A. Peck appeals the denial of a motion to suppress evidence that was obtained during a search of his residence, contending that there was insufficient evidence to establish probable cause for the search warrant. The district court found that an uncorroborated affidavit of a confidential informant satisfied the probable cause requirement and thus the warrant was valid. We disagree. However, because the evidence was admissible based on the good faith exception to the exclusionary rule of *United States v. Leon,* 468 U.S. 897 (1984), we affirm the district court's denial of Peck's motion to suppress.

## I. BACKGROUND

James Root, deputy sheriff of the Macon County Sheriff's Department, received a phone call from a confidential informant, "Pat Doe," alleging that Peck possessed crack cocaine and cannabis. Doe told Root that she wanted Peck punished because he was not paying for diapers for their child and that she thought Peck should be arrested because he was dealing drugs. Doe said she had been inside Peck's residence within the last two days. While inside the residence, Peck allegedly showed Doe large amounts of two substances wrapped in individual packages. Peck told Doe that the substances were crack cocaine and marijuana that he planned to sell. Even without Peck's representations, Doe claims that she knew what the substances were based on her own "personal experiences."

Root drafted an affidavit including Doe's statements. Because Doe had not previously given any information to the police, Root asked Doe to visit the station and swear under oath that her statements were true. Judge Paine administered the oath to Doe, and Doe then signed the affidavit. Relying on the affidavit, Judge Paine issued a search warrant. The police executed the search warrant and confiscated more than five grams of crack from Peck's house. As a result of the search, Peck was charged with possession and intent to distribute crack in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii).

Peck filed a motion to suppress the evidence seized from the search of his residence and challenged Doe's reliability, veracity, and basis of knowledge. The district court denied Peck's motion, finding, based on the totality of the circumstances, that there was enough information to establish probable cause that there were drugs in the apartment. Pursuant to a plea bargain, Peck pleaded guilty and reserved his right to appeal the district court's denial of his motion to suppress.

## II. ANALYSIS

A.  Probable Cause

When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit. *See United States v. Roth*, 391 F.2d 507, 509 (7th Cir. 1967). Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Jones*, 208 F.3d 603, 608 (7th Cir. 2000). In reviewing a judge's probable cause determination, we review the legal conclusions *de novo* and factual findings including credibility for clear error. *United States v. McGee*, 280 F.3d 803, 805 (7th Cir. 2002). Whether an affidavit established probable cause is reviewed *de novo*. *United States v. May*, 214 F.3d 900, 905 (7th Cir. 2000).

In this case, Peck challenges Doe's reliability and veracity. Thus, we consider the personal observations of the confidential informant ("CI"), the degree of detail given in the affidavit, independent police corroboration of the information, the interval of time between the events and application for a warrant, and whether the informant testified at the probable cause hearing. *See United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002); *United States v. Pless*, 982 F.2d 1118, 1125 (7th Cir. 1992). None of these factors is determinative; however, "a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability." *United States v. Brack*, 188 F.3d 748, 756 (7th Cir. 1999). Here, the district court weighed these factors and found that Doe's statements were credible because Doe appeared before the issuing judge and signed the affidavit under oath. Peck argues that even though Doe appeared before the

issuing judge, there was insufficient evidence to support a finding of probable cause because Doe's statement lacked sufficient detail and there was no independent police corroboration. We agree.

Although Doe claimed she personally observed drugs in Peck's house less than two days before the search warrant was executed and she appeared before the issuing judge, these elements are not enough to overcome the minimal amount of detail given in Doe's affidavit. Doe failed to give specific details about the drugs in Peck's house such as where the drugs were hidden, the total amount of drugs Peck possessed, or the frequency with which Peck sold drugs. The only details Doe gave were that she had been in the house and was shown drugs. *Cf. United States v. Lloyd*, 71 F.3d 1256, 1259 (7th Cir. 1995) (CI not only gave specific details about the building in which defendant resided, but also specified the precise location of the guns in that building). Furthermore, even though Doe stated that she was Peck's girlfriend, she was unable to give any information regarding Peck other than that he was a black male. *Cf. Jones*, 208 F.3d at 605-06 (CI provided specific details about defendant which the police were able to corroborate).

The affidavit further failed to explain why Doe knew that the substance in question was an illicit drug, another way to show reliability. In *United States v. Johnson*, 289 F.3d 1034 (7th Cir. 2002), although the CI's affidavit did not provide the level of specificity needed, we found that the CI's statements that Johnson possessed cocaine were reliable because the CI made statements against her interest. *Id.* at 1036. The CI was able to identify the white chunky substance as cocaine because she claimed that she had previously purchased, packaged, and sold cocaine. *Id.* In *United States v. Jones*, the CI admitted that the reason she knew the substance at issue was marijuana was because she had been to Jones's house on at

least three prior occasions to buy about twelve pounds of marijuana. *See* 208 F.3d at 606. This indicium of reliability is missing from Doe's affidavit. Instead, Doe claims that based on her "personal experiences" she knew that the substances Peck showed her were drugs without explaining why she recognized the products as drugs. Thus, the minimal amount of detail in Doe's affidavit does not support a finding of probable cause.

Compounding the weaknesses of Doe's statement is the failure of the police to corroborate her allegations. The only effort made by police to corroborate Doe's statements was a check of Peck's record, which showed that Peck had previously been arrested for drug possession. The government relies on several cases which are inapposite because in those cases the police used other methods to corroborate the CI's statements. For example, in *United States v. Lloyd*, the police also drove by Lloyd's residence with the CI, confirmed the CI's description of the residence, had the CI pick out the defendant's apartment, asked the CI to pick Lloyd out of a photo array, *and* ran Lloyd's record. *See* 71 F.3d at 1259. In *Jones*, the police drove by Jones's residence with the CI, confirmed the CI's description of the residence and that one of the vehicles in the driveway was registered to Jones, *and* corroborated the CI's statement regarding the defendant's background by running his record. *See* 208 F.3d at 606. The police need not always take these steps when trying to corroborate a CI's statements. However, the police must do more than simply run a record check of the accused, because this alone does not corroborate a CI's statements alleging that a search will uncover evidence of a crime.

Finally, although Doe appeared before the judge issuing the warrant, she did not offer any testimony. She merely took an oath that her statements were truthful. Given the deficiencies in the warrant application, we cannot find that her oath compensates for the lack of detail in the

affidavit and the failure of the police to corroborate her statements. Thus, based on the totality of the circumstances, there was not sufficient evidence to support the issuance of the search warrant.

B.  Good Faith Exception

A facially valid warrant issued by a neutral, detached magistrate will be upheld if the police relied on the warrant in good faith. *See Leon*, 468 U.S. at 914, 922-23. We "apply the *de novo* standard of review to the federal court's ultimate legal conclusion of whether a law enforcement officer reasonably relied upon a subsequently invalidated search warrant." *Koerth*, 312 F.3d at 865.

Root's decision to obtain a warrant is *prima facie* evidence that he was acting in good faith. *See Leon*, 468 U.S. at 921 n.21; *Koerth*, 312 F.3d at 868. To rebut this evidence Peck must show that the magistrate simply rubberstamped the warrant application, the officers were dishonest or reckless in preparing the affidavit, or the warrant was so lacking in probable cause that no officer could have relied on it. *See Leon*, 468 U.S. at 923; *Koerth*, 312 F.3d at 868. Peck does not argue that the issuing judge abandoned his role as a neutral and detached officer of the court when he issued the warrant or that Root was dishonest or reckless. Instead, Peck argues that the warrant was facially deficient because Doe did not give any details regarding Peck's alleged drug possession and the police knew that Doe was biased.

Even though the warrant issued by the judge was bare bones, it was not so lacking as to make it facially deficient. Although minimal, Doe's statement did contain evidence that Peck possessed and planned on selling drugs. Based on this evidence, Root checked Peck's record and determined that he had a prior drug conviction. In addition, Root addressed issues regarding Doe's credibility and veracity by requiring Doe to come to the police station and

sign her statement under oath in front of the issuing judge. Therefore, it was reasonable for Root to rely on a warrant issued by a neutral and detached officer of the court. *See Leon*, 468 U.S. at 923.

Peck also contends that because the police only made cursory inquires into Doe's motives, the fact that Doe appeared before the issuing judge is not enough to remove the taint of her bias from the warrant. However, most CIs have a bias against the defendant or something to gain from giving their statement. *See, e.g.*, *Lloyd*, 71 F.3d at 1259 (CI and defendant were in opposing factions of the same gang). The fact that the police used Doe's statement even when they knew she was biased was not unreasonable. In fact, her relationship with Peck may have made her story more credible because, as someone close to Peck, she was more likely to know that drugs were in the house other than someone not close to Peck. Though the police did not take the steps that we require to demonstrate probable cause, the measures that they did take when receiving the information from the CI were sufficient to show their good faith reliance on the warrant.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

A true Copy:

      Teste:

                         _____
                         *Clerk of the United States Court of*
                         *Appeals for the Seventh Circuit*