**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Cortez D. GILLUM, Defendant–Appellant.**

No. 02–3425.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 24, 2003.

Decided March 21, 2003.

Before RIPPLE, EVANS, and WILLIAMS, Circuit Judges.

## ORDER

Cortez D. Gillum was charged in a one count indictment with being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Mr. Gillum filed a motion to suppress all evidence found after his arrest. Following a suppression hearing, the district court denied the motion. On May 2, 2002, Mr. Gillum pleaded guilty, but reserved the right to appeal the denial of the motion to suppress. On September 6, 2002, the district court sentenced Mr. Gillum to 120 months' imprisonment, to run consecutive with the undischarged portions of state court sentences he was serving, three years' supervised release, and a $100 special assessment. On September 16, 2002, Mr. Gillum filed a timely notice of appeal. The district court concluded that the search warrant was not based on probable cause.

*See* Tr. at 75–76. Nevertheless, the court held that the search satisfied the good-faith exception to the exclusionary rule and that, consequently, the evidence seized was admissible. *See* Tr. at 77–79. The district court's determination was correct, and, accordingly, we affirm its judgment.

On October 12, 2001, at approximately 5:13 a.m., officers of the Springfield Police attempted to question Mr. Gillum concerning a stolen car in which he was riding. When asked to stop, Mr. Gillum fled on foot, and the officers chased him into the apartment of his cousin, Alte Gillum. The officers arrested Mr. Gillum because of an outstanding parole warrant and because he was suspected of his brother's murder ten days earlier. The officers immediately sealed the scene and sought a warrant from a state judicial officer. They also advised Mr. Gillum of his *Miranda* rights. He nevertheless admitted later to placing a .380 caliber semiautomatic pistol in the kitchen ceiling of the apartment. Later that morning, at about 9:25 a.m., Alte Gillum arrived and granted his consent to search the apartment. The police did not proceed to search but waited for the warrant to arrive.

The district court identified a number of flaws in the search warrant and the supporting affidavit and concluded that there was no probable cause to issue a warrant. For example, the court noted that the affidavit was drafted by Detective Paul Carpenter, but it related observations made by Sergeant Bivens; there was no link describing how Detective Carpenter had learned of these matters. *See* Tr. at 75–76. More significantly, there was no statement that the Washington Park murder victim was shot, which would explain why the police were searching for a gun. *See* Tr. at 76. Additionally, the warrant authorized the seizure of "clothing," "instrumentalities of the crime," "scientific

trace evidence," and "any and all fruits or instrumentalities of any crime." The court held that these categories were too broad, and, in the case of "instrumentalities of the crime," meaningless. *See* Tr. at 78. The warrant also authorized the seizure of "firearms and firearms ammunition," which the court concluded was specific and could be separated from the impermissibly broad matters pursuant to *United States v. Reed,* 726 F.2d 339, 342 (7th Cir.1984). *See* Tr. at 79. The court noted that the impermissibly broad language in the warrant had been approved by the state attorney's office, and concluded that the warrant was not so facially deficient to vitiate the officers' claims of good faith.

In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court recognized a good-faith exception to the exclusionary rule for situations in which law enforcement officers conduct a search with an objectively reasonable belief that it is supported by a valid warrant. *See id.* at 922–23. We review de novo the district court's ultimate conclusion of whether a law enforcement officer reasonably relied upon a search warrant lacking probable cause. *See United States v. Peck,* 317 F.3d 754, 757 (7th Cir.2003). Mr. Gillum submits on appeal that "[t]he affidavit in this case is so completely lacking in indicia of probable cause as to render reliance on any warrant issued on the basis of the affidavit unreasonable." Appellant's Br. at 22. Mr. Gillum has failed to meet this difficult standard. These defects are not sufficient to make the warrant so facially flawed that it was objectively unreasonable for a police officer to have relied on the warrant. *See, e.g., United States v. Langford,* 314 F.3d 892, 894 (7th Cir.2002) (noting thin basis of evidence of drug dealing, including only minimal amount of marijuana found in garbage, but commenting that "[p]olice are not legal experts and are entitled to rely

upon a warrant duly issued by a judicial officer on the basis of an affidavit that so far as the police know is accurate and complete ..."); *Peck,* 317 F.3d at 757–58 (finding good faith even though only evidence was uncorroborated testimony of a potentially biased confidential informant). Here, the application for the warrant had been approved by the state attorney's office and similar applications had been accepted by state judicial officers in the past. Moreover, the focal point of the search, the firearm, was stated with reasonable specificity. Under these circumstances, we believe that the officers reasonably relied upon the warrant.

The district court also supported its denial of the motion to suppress with the alternative holding that Alte Gillum, Mr. Gillum's cousin and the lessee of the apartment, gave the officers consent to search his apartment. *See* Tr. at 80. The officers secured Alte Gillum's consent to search but did not conduct the search solely on these grounds; they waited for the warrant to arrive. Mr. Gillum argues, "Having made the decision to reject Alte Gillum's consent to search and instead obtain a warrant that would leave Alte Gillum with no say regarding the search of his residence, the Government should have to live with its decision." Appellant's Br. at 23. Whether an individual voluntarily consented to a search is a question of fact reviewed for clear error. *See United States v. Pedroza,* 269 F.3d 821, 829 (7th Cir.2001).

Contrary to Mr. Gillum's suggestion, the record does not support a finding that the police rejected Alte Gillum's consent, or that the valid consent had been withdrawn. *See United States v. Patterson,* 97 F.3d 192, 195 (7th Cir.1996) (indicating that "[i]f the [defendant] had intended to limit the scope of his consent in any manner, the burden was upon him to do so"). Alte Gillum testified at the suppression hearing

that he did not give the officers consent to search, *see* Tr. at 60–61, but Special Agent Tom Fischer, *see* Tr. at 10, and Detective Don Kolar, *see* Tr. at 20–21, both testified to the contrary. It certainly was not clear error for the court to weigh the testimony and conclude that "on balance" the officers were more credible. *See* Tr. at 80.

■ Finally, the district court held that, in addition to its rulings on the good faith exception and consent, Mr. Gillum's statement that he hid the .380 caliber gun in the ceiling of Alte Gillum's apartment was admissible, because the statement was not fruit of the poisonous tree. *See* Tr. at 80–81. The district court determined that, even if the search was illegal, Mr. Gillum had begun to make his statements to the police before the commencement of the search; he had been read his *Miranda* warnings. His statement had led to finding the gun as opposed to the gun's leading to a statement. *See* Tr. at 80–81.

Mr. Gillum's brief argues that the police found a different gun in the search and confronted Mr. Gillum with this illegally obtained evidence, which prompted his statement concerning the .380 caliber handgun. *See* Appellant's Br. at 24. However, the record does not support this contention. Sergeant James Morrisey, who conducted the interview of Mr. Gillum in which he revealed the existence of the gun, testified that the officers conducting the search called him and told him that they had discovered a .45 caliber pistol. *See* Tr. at 50. Sergeant Morrisey testified that he had a conversation with Mr. Gillum after receiving this call, in which he asked Mr. Gillum whether he had a gun before he ran into the house, at which point Mr. Gillum admitted to hiding a gun in the kitchen ceiling. *See* Tr. at 51. Contrary to Mr. Gillum's contention, this testimony does not present a case of a defendant's being confronted with illegally seized evidence. Given the fact that the police sus-

pected Mr. Gillum of murder and that they had not yet recovered the murder weapon, it is likely that the question of whether Mr. Gillum had a gun would have been addressed at some point in the questioning. Therefore, even though the search prompted the question of whether Mr. Gillum had a gun in the apartment, the question would have been asked, and the inevitable discovery doctrine operates to purge the search of any primary taint. *See United States v. Swift,* 220 F.3d 502, 507 (7th Cir.2000). Therefore, even if we assume that the court erroneously held that the fruits of the search were admissible under the good faith exception, Mr. Gillum's request to suppress his statement disclosing the location of the gun was properly denied.

For the reasons stated above, we affirm the judgment of the district court.

AFFIRMED