In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1298

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TODD SUTTON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:10-CR-20048 — **Michael M. Mihm**, *Judge.*

ARGUED DECEMBER 12, 2013 — DECIDED FEBRUARY 10, 2014

Before BAUER, CUDAHY, and POSNER, *Circuit Judges.*

CUDAHY, *Circuit Judge.* This case concerns the sufficiency of evidence for a search warrant. Defendant Todd Sutton appeals an order denying his motion to suppress the fruits of a search of his cousin's apartment, arguing that the underlying warrant was not supported by probable cause. Agents executing that warrant found more than fifty grams of crack cocaine. Pursuant to a plea agreement, Sutton pleaded guilty, but retained the right to appeal the denial of the motion to

suppress. Because the facts indicate that probable cause existed for the search warrant, we now affirm.

This investigation began when Special Agent Kristopher Lombardi of the Kankakee Metropolitan Enforcement Group (KAMEG) received a tip from a confidential informant (CI) that he had seen an individual known as "Cap" in possession of an ounce of cocaine and provided the address of an apartment where he had seen "Cap." The CI was familiar with cocaine and its distribution because he had previously been involved in the sale of narcotics. In an effort to obtain leniency on pending drug charges, the CI was working with KAMEG. In fact, within a six month period prior to this search, he had provided information that had led to another cocaine seizure and arrest.

Acting on the CI's information, Lombardi searched the name "Cap" in a law enforcement database containing aliases of arrestees and suspects. Todd Sutton was listed as a match for the alias "Cap." Lombardi then obtained a booking photo of Sutton and showed it to the CI, who confirmed that the man he identified as "Cap" was Sutton. Lombardi then drove the CI past the address where the CI claimed to have witnessed Sutton in possession of the cocaine. The CI confirmed the location. The CI further informed Lombardi that the apartment's tenant was Nikiya Foster, whom the CI believed to be Sutton's girlfriend. A law enforcement database confirmed that Foster was indeed the apartment's tenant; however, Lombardi later discovered that she was actually Sutton's cousin.

That same day, Lombardi took the CI before a Kankakee County judge when the CI signed a "John Doe" affidavit in

support of a search warrant. That affidavit read in relevant part as follows:

> Within the past 10 days from May 2nd, 2010 I have seen approximately one ounce of cocaine inside the residence located at 1525 West Station St. Apt. 1W, Kankakee, IL. I am familiar with cocaine and the way it is packaged for sale because I have sold cocaine in the past. I am not currently under the influence of alcohol or drugs. At this time, I am a Confidential Informant Source for KAMEG. I am using an assumed name for fear that I may receive bodily harm for the information that I have provided for KAMEG.

Lombardi filed his own affidavit in support of the warrant reiterating the CI's information, detailing certain corroboration and describing Lombardi's previous experience with the CI. The county judge issued the warrant, and officers executed it that same evening. During the search, agents found: 63 grams of crack cocaine in a bedroom closet; male clothing and shoes in the same closet; a digital scale with white powder residue and other items frequently used to cook crack cocaine in the kitchen; a handwritten letter on the kitchen table referring to "Cap"; and a computer, on which agents viewed a video depicting Sutton in the apartment. Following Sutton's arrest, agents discovered that Foster was Sutton's cousin, not his girlfriend; that Sutton was the only person in possession of keys to the apartment besides her; and that she rarely entered the bedroom where the cocaine was found.

Sutton was indicted and subsequently filed a motion to suppress the evidence on the bases that (1) the warrant was based on stale information; (2) the CI's information was base-

less and uncorroborated; and (3) the affidavit supporting the warrant was reckless, and contained at least one false statement. Determining that there was probable cause and that none of Sutton's arguments warranted suppression, the district court denied the motion. Sutton then pleaded guilty to possession with intent to distribute 50 grams or more of crack cocaine. Subject to his plea agreement, Sutton retained his right to appeal the district court's ruling on the suppression motion.

## I.

This warrant was supported by probable cause. "Probable cause is established when, considering the totality of the circumstances, there is sufficient evidence to cause a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Harris*, 464 F.3d 733, 738 (7th Cir. 2006) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). When a search is authorized by a warrant, deference is owed to the issuing judge's conclusion that there is probable cause. *United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008). Courts should defer to the issuing judge's initial probable cause finding if there is "substantial evidence in the record" that supports his decision. *Id*. (citing *United States v. Koerth*, 312 F.3d 862, 865 (7th Cir. 2002)). However, a judge may not rely solely on "conclusory allegations" or a "bare bones" affidavit. *Id*.

When probable cause is supported by information supplied by an informant, we particularly look to several factors: (1) the degree to which the informant has acquired knowledge of the events through firsthand observation, (2)

the amount of detail provided, (3) the extent to which the police have corroborated the informant's statements, and (4) the interval between the date of the events and the police officer's application for the search warrant. *United States v. Searcy*, 664 F.3d 1119, 1122 (7th Cir. 2011) (citing *United States v. Garcia*, 528 F.3d 481, 485–86 (7th Cir. 2008)). It is also significant if an informant appears before the magistrate in person and files his or her own supportive affidavit; doing so affords the magistrate a greater opportunity to assess credibility. *Sims*, 551 F.3d at 640 (citing *United States v. Lloyd*, 71 F.3d 1256, 1263 (7th Cir. 1995)). Taken as a whole, these factors support the initial finding of probable cause by the Kankakee County judge.

Sutton challenges every prong of this analysis. However, there is no real issue regarding the CI's firsthand knowledge. There is no dispute that the CI swore he had firsthand knowledge of Sutton's possession of cocaine in Foster's apartment, details about the amount of cocaine in Sutton's possession, the location of the apartment and the relationship between Sutton and Foster. Every piece of relevant evidence in the affidavit came from the CI's firsthand knowledge.

*Specificity*

Likewise, Sutton's argument regarding the second factor, specificity of the supporting affidavits, fails. The affidavits clearly establish that Sutton was in possession of an ounce of cocaine in the apartment and on a specific date. The CI further established a connection between Sutton and the apartment by describing a close, personal relationship between Sutton and Foster. While an ideal affidavit might contain more information and not mistake a girlfriend for a cousin,

the information here is sufficiently specific to satisfy this prong. Indeed, much less specific affidavits have been properly used to support warrants. *See e.g.*, *Garcia*, 528 F.3d at 486; *Sims*, 551 F.3d at 644.

*Corroboration*

In his challenge to the third factor, Sutton argues that none of the CI's observations were corroborated. Despite this bald assertion, Lombardi did take sufficient steps to corroborate the CI's information: Lombardi confirmed that Sutton was "Cap" by searching law enforcement databases; Lombardi confirmed the CI's identification of Sutton by showing the CI a mugshot of Sutton; Lombardi drove past the address the CI identified as the location where he observed Sutton with the cocaine; and Lombardi verified that Foster was the tenant of the apartment after the CI informed Lombardi of the relationship between Foster and Sutton. Ultimately, Lombardi took reasonable steps to ensure that the CI's information was accurate—we see no reason why we should find this corroboration insufficient.

*Staleness*

Sutton focuses much of his appeal on staleness. He argues that the one to ten day period between the time the CI witnessed Sutton in the apartment with cocaine and the execution of the search warrant is enough to render the warrant stale. First, we point out that we do not actually know how many days elapsed between the CI's observation of Sutton and the search. Due to the sensitive nature of the CI's information a range was used to conceal the CI's identity, rather than revealing on precisely which day the CI was in the apartment. Thus, the information could have been as much

as ten days old at the time of the search, but could have been as recent as one day old.

Sutton points out that the government has not cited any case where a warrant has been substantiated on the basis of a single occurrence of criminal activity outside a 72-hour window. Sutton may be correct in his assertion, but the absence of such precedent does not create a 72-hour rule. Indeed, there is no bright line rule for determining staleness. *United States v. Pappas*, 592 F.3d 799, 803 (7th Cir. 2010). Instead of setting a time limit for staleness, we consider the age of the CI's information in conjunction with the rest of the factors. *See e.g.*, *United States v. Pless*, 982 F.2d 1118, 1125–26 (7th Cir. 1992). To the extent that ten days is a lengthier interval than usual, it is not so long as to completely dispel any belief that a search would be fruitful—particularly in light of the fact that the CI had previously provided reliable information to law enforcement resulting in arrest and seizure of drugs.

Sutton also argues that the warrant was impermissibly stale because the supporting affidavits did not establish regularity of drug use or sale. While evidence of regularity may be helpful to determine how long a CI's information will remain useful, it is not a legal requirement. Instead, the affidavits must provide enough information to lead a reasonably prudent person to believe a search would be fruitful. *Harris*, 464 F.3d at 738. Because the circumstances point toward probable cause, this staleness argument fails as well.

Finally, Sutton argues that the warrant was stale because the affidavits do not establish any connection between the cocaine and the apartment. This is simply not true. The CI observed Sutton in possession of cocaine while he was in the apartment. Without any other connection, this fact alone

might be insufficient. However, the CI's information also established an undisputed connection between Sutton and Foster, the tenant of the apartment. Given Sutton's close personal relationship with Foster, Sutton's argument that there was no connection between the cocaine and the apartment is inaccurate.

*Credibility*

In addition to challenging these four factors, Sutton challenges the CI's reliability on the grounds that he (1) erred in identifying the nature of Sutton and Foster's relationship; (2) provided reliable information on only one prior occasion, six months removed; and (3) provided information to obtain leniency on his own drug charges, making him inherently unreliable. None of these arguments are availing. First, the mistake concerning the nature of Sutton and Foster's relationship was, as the district court determined, de minimis. Despite the mistake, the CI still accurately described a close personal relationship between Foster and Sutton. For substantiating the warrant, the existence of a relationship is far more material than what exactly the relationship was. Second, the fact that the CI provided accurate information leading to an earlier arrest and drug seizure weighs in favor of credibility—the fact that he did this only once is not indicative of a lack of credibility. In fact, our case law suggests that a CI's prior cooperation with police, if accurate, can compensate for an affidavit's lack of specificity. *See Searcy*, 664 F.3d at 1123–24. Third, this court has rejected the argument that a CI's cooperation for leniency is inherently unreliable. *See United States v. Olson*, 408 F.3d 366, 371 (7th Cir. 2005). Finally, the CI personally appeared and presented his affidavit to the county judge, allowing the judge to evaluate his

knowledge and credibility. Given the deference we give to the judge's finding of probable cause, this weighs significantly in favor of the CI's credibility. *See Sims*, 551 F.3d at 644.

In light of the foregoing, it was reasonable for the issuing judge to conclude that a search would uncover illegal drugs. Therefore, Sutton's arguments are insufficient to justify reversing the district court's denial of Sutton's motion to suppress.

## II.

Both parties addressed the good faith exception from *United States v. Leon*, 468 U.S. 897 (1984). However, this exception is only relevant if the warrant at issue lacked probable cause. Because we find it clear that probable cause existed at the time the search warrant was issued, we see no need to address the good faith exception.

WE AFFIRM.