NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 17, 2014
Decided January 12, 2015

**Before**

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 14-1140

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee,* <br><br> *v.* <br><br> JOSEPH P. OLIVO, <br> *Defendant-Appellant.* | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. <br><br> No. 3:12cr110-003 <br><br> Jon E. DeGuilio, <br> *Judge.* |

## O R D E R

Joseph Olivo pleaded guilty to conspiring to possess and distribute marijuana, distributing heroin, using a residence to distribute marijuana, and possessing a firearm as a felon. In his plea agreement Olivo waived his appeal rights with one exception: to challenge an adverse ruling on his motion to suppress evidence seized at his house. Olivo argues that the affidavit underlying a state search warrant did not support a finding of probable cause, and urges that the investigators who executed the warrant could not have believed in good faith that the affidavit established probable cause. We conclude that the affidavit was sufficient and, thus, affirm the judgment.

The Sheriff's Department in Elkhart County, Indiana, was tipped off to Olivo's involvement in drug trafficking by an informant who had just been caught with marijuana. Deputy Robert Smith stopped the informant for a traffic violation on September 20, 2012. The informant abandoned his car and fled on foot; after he was caught the deputy viewed in plain sight a bag of marijuana in the car, arrested the informant, and placed him in a squad car. When an investigator arrived from the multiagency Interdiction and Covert Enforcement Unit, which is responsible for major drug investigations in the county, the informant volunteered that he had "valuable information" about drug activity.

Captain Shawn Turner, the Unit's commander, then went to the scene and interviewed the informant. Turner included the following information from this interview in the affidavit he prepared in support of a search warrant for Olivo's home. The informant explained that he was selling marijuana for a large operation that received its shipments from Texas every couple of months. Before he was pulled over, the informant had been at a house in Rolling Prairie, Indiana, where Olivo (whom the informant calls "O") was living and storing more than 100 pounds of marijuana. The informant identified Olivo from a picture that another deputy showed him. Olivo, the informant said, kept the drugs in a closet and also had money (of which, he said, there was at least $90,000 from a recent payment from another conspirator) in a safe in his bedroom. The informant added that he knew Olivo previously had been arrested for selling methamphetamine and marijuana. The investigators confirmed Olivo's criminal history. Lastly, the informant provided precise directions to Olivo's house, which he described in detail. Turner followed those directions and found a house matching the informant's description. Turner later showed a photo of that house to the informant, who confirmed that it was the one Olivo was using to store marijuana.

Before applying for the search warrant, Captain Turner learned more about the informant's background. First, Turner contacted a South Bend detective, whom the informant claimed to have helped in the past. The detective confirmed that the informant had supplied reliable and accurate information for past investigations, including one leading to an arrest for possessing a couple pounds of methamphetamine. Second, Turner questioned a different informant—one already known to be reliable—who confirmed that the new informant was selling large amounts of marijuana in Elkhart County, that the drugs came from someone named "O," and that "O" received the drugs from Texas.

The next day a state-court judge issued a search warrant for the house identified by the informant. In the bedroom the investigators found a drug ledger, a loaded handgun, $2,441 in currency on the floor, and another $2,300 in a nightstand. A safe in the bedroom closet contained $139,870 and 2 pounds of marijuana, and in the basement another 99 pounds of marijuana were found plus two more handguns.

Olivo initially was charged with conspiring to possess and distribute marijuana, 21 U.S.C. §§ 846, 841(a)(1), possessing marijuana with intent to distribute, *id*. § 841(a)(1), possessing a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A), and possessing a firearm as a felon, *id*. § 922(g). After Olivo had notified the prosecutor that he intended to plead guilty but then changed his mind, the government added two more charges based on its continuing investigation: one for distributing heroin, 21 U.S.C. § 841(a)(1), and another for renting a residence for the purpose of distributing marijuana, *id*. § 856(a)(1).

Olivo then moved to suppress the evidence seized from his house. He argued that the affidavit supporting the warrant did not establish probable cause since, he reasoned, the informant's statements were neither sufficiently reliable on their own nor adequately corroborated. The district court concluded, however, that the affidavit established probable cause and thus denied Olivo's motion.

The following month Olivo pleaded guilty to four of the charges—conspiring to possess and distribute marijuana, distributing heroin, maintaining a residence to distribute marijuana, and possessing a firearm as a felon—and in exchange the government dismissed the other two charges. As part of his plea agreement, Olivo waived his right to appeal with an exception allowing him to challenge the district court's adverse ruling on his motion to suppress. The district court later sentenced Olivo to 292 months' imprisonment.

On appeal Olivo argues that the affidavit underlying the warrant did not establish probable cause because, he says, the informant did not divulge how he learned the information that he provided, was not shown to be reliable, and was not adequately corroborated. In reviewing a ruling on a motion to suppress evidence, we greatly defer to the probable cause finding made by the judge who issued the warrant. *United States v. Sutton*, 742 F.3d 770, 773 (7th Cir. 2014); *United States v. Robinson*, 724 F.3d 878, 884 (7th Cir. 2013). We will affirm so long as the issuing judge had a substantial basis for concluding that the search would detect evidence of criminal activity. *See Illinois v. Gates*, 462 U.S. 213, 236 (1983); *Sutton*, 742 F.3d at 773; *United States v. Glover*, 755 F.3d

811, 816 (7th Cir. 2014); *United States v. Farmer,* 543 F.3d 363, 377 (7th Cir. 2008). And when an informant supplies probable cause, we consider, among other things, (1) the extent of police corroboration, (2) the degree to which the informant acquired the information firsthand, (3) the level of detail provided, and (4) the time lapse between the informant's observations and the warrant application. *United States v. Spears,* 673 F.3d 598, 608 (7th Cir. 2012); *United States v. Hicks,* 650 F.3d 1058, 1065 (7th Cir. 2011).

Here, the totality of the circumstances reveals an ample basis for finding probable cause. The informant gave a detailed description of what he saw, where he saw it, and when: He said that he was at the house before he was pulled over, and that inside were over 100 pounds of marijuana (stored in a closet) and at least $90,000 (hidden in a safe in the bedroom); he identified Olivo from a picture; and he gave the investigators detailed directions to the house. Captain Turner verified the informant's reliability and corroborated much of his information by contacting both another detective, whom the source had assisted previously, and one of his own informants, whom Turner knew to be reliable and who confirmed that the new informant indeed was a member of Olivo's drug operation. And the warrant was issued the next day.

Nevertheless, Olivo insists that *United States v. Peck,* 317 F.3d 754 (7th Cir. 2003), and *United States v. Mykytiuk,* 402 F.3d 773 (7th Cir. 2005), demand that we reach a different conclusion. We disagree. In *Peck,* a search warrant was secured after an informant, Pat Doe, told the police that Peck possessed crack cocaine and marijuana. 317 F.3d at 755. Doe elaborated only that she had been at Peck's home within that last two days and that he had shown her two substances wrapped in individual packages, which Peck had said was crack and marijuana that he planned to sell. *Id.* We concluded that Doe's assertions did not establish probable cause to obtain a search warrant for Peck's home because she provided no details about where the drugs were hidden or the quantity that Peck possessed. *Id.* at 756. But here, the informant *did* specify where Olivo kept drugs and how much was at the house.

In *Mykytiuk,* the police executed a search warrant at a house and found materials used to manufacture methamphetamine. 402 F.3d at 775. The resident told the police that he and Mykytiuk had stolen the anhydrous ammonia that was found, that it had been stored at Mykytiuk's house up until a few days earlier, and that Mykytiuk manufactured methamphetamine at his house and stored the materials in cars parked outside the house. *Id.* Based on that information alone a search warrant for Mykytiuk's house was secured. *Id.* We concluded that the warrant was not based on probable cause because there was no evidence that the source was reliable. *Id.* at 776–77. But in this

case, Captain Turner verified the informant's reliability in two different ways. Thus, neither of the cited opinions alters our conclusion.

Moreover, even if we could accept Olivo's contention that the affidavit does not establish probable cause, the evidence would still be admissible under the good-faith exception to the exclusionary rule set forth in *United States v. Leon,* 468 U.S. 897 (1984), providing an alternative basis for affirmance. Olivo insists that the exception does not apply because the affidavit was so lacking in probable cause that no police officer reasonably could have relied on it. In Olivo's view, the affidavit was missing a statement linking the informant's information to how that information was obtained (e.g., "I know there are 100 pounds of marijuana at Olivo's house *because I saw it* in a closet."). But an affidavit need not be "airtight or flawless" to fall under the exception's ambit; rather, the affidavit must contain only "some indicia of criminal activity on the property" to be searched. *United States v. Jones*, 763 F.3d 777, 797 (7th Cir. 2014) (internal quotation marks and citation omitted). And as discussed above, the affidavit in this case contained a hefty amount of probable cause and was hardly the sort of "bare bones" affidavit that would preclude us from applying the exception. *See, e.g., Owens v. United States,* 387 F.3d 607, 608 (7th Cir. 2004); *United States v. Wilhelm,* 80 F.3d 116, 120–21 (4th Cir. 1996); *United States v. Barrington,* 806 F.2d 529, 531–32 (5th Cir. 1986).

One final note. Olivo tells us that his appointed lawyer on appeal provided ineffective assistance on numerous grounds. But that claim should be pursued in a collateral proceeding under 28 U.S.C. § 2255 and not in a direct criminal appeal. *See United States v. Bryant,* 754 F.3d 443, 444 (7th Cir. 2014); *United States v. Jones,* 696 F.3d 695, 702 (7th Cir. 2012); *United States v. Harris,* 394 F.3d 543, 557–58 (7th Cir. 2005).

AFFIRMED.