In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1537

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TYRONE MCMILLIAN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 11-CR-281 — **Rudolph T. Randa**, *Judge.*

ARGUED JANUARY 20, 2015 — DECIDED MAY 22, 2015

Before RIPPLE and ROVNER, *Circuit Judges,* and KENNELLY, *District Judge.*[1]

KENNELLY, *District Judge.* Tyrone McMillian was found guilty after a bench trial on one count of possession of firearms and ammunition as a felon in violation of 18 U.S.C.

---

[1] Of the United States District Court for the Northern District of Illinois, sitting by designation.

§§ 922(g)(1) and 924(a)(2).  McMillian now appeals the denial
of his motion to suppress.  We affirm.

## I.  Background

On July 6, 2011, Milwaukee Police Officer Brian Shull re-
viewed a "suspect card," an internal document issued by the
Milwaukee Police Department, which detailed probable
cause to arrest Tyrone McMillian for his alleged involvement
in a 2007 double homicide.  After conducting a brief investi-
gation, Officer Shull went to McMillian's home in Brown
Deer, Wisconsin to arrest him.  Because the arrest was con-
sidered a "high felony arrest" or a "dangerous arrest," offic-
ers from the Milwaukee Police Department's tactical en-
forcement unit were called to assist.  Officers from the
Brown Deer Police Department were also called.  In total, six
or seven additional officers arrived at McMillian's house at
approximately 1:00 pm.  They did not have an arrest warrant
or a search warrant.

The officers surrounded the house.  Shull knocked and
announced that he was a police officer.  Ashley Knueppel,
McMillian's cohabiting girlfriend, came to the door and con-
firmed that McMillian was inside.  She stepped outside, and
Officer Shull called for McMillian.  When he came to the
door, Officer Shull arrested him.  Tactical officers then con-
ducted a protective sweep of the house.  During the sweep,
officers observed a rifle case in one of the bedrooms.

As the sweep was taking place, Officer Shull noticed that
McMillian was barefoot and asked if he wanted shoes.
McMillian responded that he wanted his black Air Jordan
Nike flip flops.  Officer Shull asked if he wanted the black
flip flops that were near the doorway.  McMillian responded

that those were his girlfriend's shoes and that his were in the back bedroom.

Officer Shull took this exchange as a request by McMillian to get his flip flops from the back bedroom. After the protective sweep was completed, Officer Shull asked Knueppel if she knew where the flip flops were located. Knueppel responded that she did and, according to Shull, one of them said something like, "Let's go get them." The two entered the back bedroom. As Officer Shull bent to pick up the shoes next to the bed, he saw two gun cases between the bed and the nightstand.

After the arrest, an officer on the scene contacted Milwaukee Police Detective Rodolfo Gomez. Detective Gomez drafted an affidavit for a warrant to search McMillian's residence. The affidavit said that an AK-47 assault rifle had been observed during the protective sweep (the government admitted this was wrong and that it should have stated that the officers observed a rifle *case*). The affidavit also referenced the gun cases Officer Shull had observed when he retrieved the flip flops. The affidavit also described an informant's statement that McMillian had confessed his involvement in two 2007 homicides. A state court judge issued the search warrant.

When Detective Gomez arrived at McMillian's residence with the search warrant, he noticed a typographical error in the warrant and affidavit. Although McMillian lived at 6333 West Darnell Avenue, Detective Gomez had typed 6633 West Darnell Avenue. He called the judge, who instructed him to correct the mistake by hand. Detective Gomez did so and noted that the judge had approved the correction. Detective Gomez was not placed under oath when he revised the ad-

dress.  Officers searched McMillian's house and recovered firearms and ammunition.

The July 6, 2011 search and arrest led to two indictments. McMillian was first indicted on September 7, 2011 on sex trafficking charges.  *See United States v. McMillian*, No. 11-CR-193 (E.D. Wis.) (Clevert, J.).[2]  The sex trafficking charges are not part of this appeal.  McMillian was indicted on the charge that is the subject of this appeal on December 6, 2011. A grand jury charged him with one count of possession of firearms and ammunition as a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  *See United States v. McMillian*, No. 11-CR-281 (E.D. Wis.) (Randa, J.).

McMillian filed pretrial motions as part of the sex trafficking case before Judge Charles Clevert, Jr., including a motion to suppress the fruits of the July 6, 2011 protective sweep and a motion to quash the search warrant that was executed that day.  At the request of the parties, Judge Rudolph Randa continued proceedings in the firearm possession case pending a decision on McMillian's pretrial motions in the sex trafficking case.  Judge Randa agreed that Judge Clevert's rulings would be dispositive in the firearms case.

Judge Clevert referred the sex trafficking case to Magistrate Judge Nancy Joseph.  The government conceded that the protective sweep of McMillian's house was unlawful and

---

[2] A grand jury handed down a superseding indictment on October 18, 2011.  McMillian was convicted by a jury of four counts of sex trafficking.  According to the government, none of the materials seized from McMillian's house were used in the prosecution of the sex trafficking case.  This court recently affirmed McMillian's sex trafficking conviction but vacated the sentence imposed by the district court.  *United States v. McMillian*, 777 F.3d 444, 452 (7th Cir. 2015).

agreed to strike the description of the rifle from the search warrant affidavit. Magistrate Judge Nancy Joseph held an evidentiary hearing to consider McMillian's other suppression arguments. In his post-hearing briefing, McMillian made a number of additional arguments. First, McMillian argued that neither he nor Knueppel voluntarily consented to Officer Shull's entry and that the observations of the gun cases should therefore be excised from the warrant affidavit. Additionally, McMillian argued that the reference to the uncorroborated statement of an informant accusing McMillian of being involved in a 2007 double homicide did not supply probable cause. Finally, he argued that the warrant was deficient because Detective Gomez was not under oath when he corrected the error in the address.

In her report and recommendation following the hearing, Magistrate Judge Joseph agreed that the protective sweep was unlawful. She nonetheless concluded that Officer Shull's entry into the back bedroom was lawful because McMillian voluntarily consented. Magistrate Judge Joseph did not address Knueppel's consent. Turning to the validity of the search warrant, Magistrate Judge Joseph found that there was no probable cause to search for evidence of the 2007 homicides but that there was probable cause to search for firearms. Magistrate Judge Joseph determined that although Detective Gomez was not under oath when he corrected the address, he nonetheless acted in good faith.

Judge Clevert held an additional evidentiary hearing. He agreed with Magistrate Judge Joseph that there was no probable cause to search for evidence of the homicides, that evidence obtained from the unlawful protective sweep was inadmissible, and that Detective Gomez had acted in good

faith when he corrected the address. Judge Clevert conclud-
ed that McMillian and Knueppel impliedly consented to Of-
ficer Shull's entry into the bedroom. Judge Clevert did not
expressly rule on whether Officer Shull's observation of the
two gun cases supplied probable cause to search for weap-
ons, although he determined that the officers acted in good
faith despite any deficiencies in the search warrant. Judge
Clevert therefore denied McMillian's motion to quash the
search warrant.

Pursuant to the parties' agreement, Judge Randa accept-
ed Judge Clevert's ruling, and the parties proceeded to a
stipulated bench trial. Judge Randa found McMillian guilty
of one count of possessing firearms and ammunition as a
felon and sentenced him to 77 months imprisonment and 3
years of supervised release.

## II. Discussion

In reviewing the denial of a motion to suppress evidence,
we review the district court's factual findings for clear error
and its legal conclusions de novo. *United States v. Gutierrez*,
760 F.3d 750, 753 (7th Cir.), *cert. denied*, 135 S. Ct. 735 (2014).
On appeal, McMillian argues that the arrest, the protective
sweep, and Officer Shull's entry into the back bedroom were
unlawful and that the search warrant was defective. We ad-
dress each of McMillian's arguments in turn.

### A. Legality of McMillian's Arrest

McMillian argues that his arrest inside the doorway of
his house was unlawful because the Fourth Amendment
prohibits the police from making "a warrantless and non-
consensual entry into a suspect's home in order to make a
routine felony arrest." *Payton v. New York*, 445 U.S. 573, 576

(1980). Although the government disputes the contention that McMillian was inside at the time of his arrest, we need not consider whether Officer Shull crossed the threshold of the house. McMillian forfeited the right to appeal the legality of his arrest by failing to challenge the arrest before the district court.

A criminal defendant forfeits an argument if he "negligently fails to assert a right in a timely fashion." *United States v. Brodie*, 507 F.3d 527, 530 (7th Cir. 2007); *see also United States v. Kelly*, 772 F.3d 1072, 1079 (7th Cir. 2014). Although plain error review generally applies to forfeited arguments, Federal Rule of Criminal Procedure 12(c)(3) imposes an antecedent good-cause requirement when a defendant fails to file a timely motion to suppress. FED. R. CRIM. P. 12(c)(3).[3] Before a court may consider an untimely motion to suppress, "a defendant must first establish good cause for the absence of a pretrial motion." *United States v. Acox*, 595 F.3d 729, 731 (7th Cir. 2010); *see also Kelly*, 772 F.3d at 1079.[4]

---

[3] Rule 12 was amended while this appeal was pending. The provision addressing the effect of a failure to raise an issue in a pretrial motion, formerly found in Rule 12(e), was relocated to Rule 12(c)(3), effective December 1, 2014. The reference to "waiver" was removed to clarify that the rule does not contemplate waiver as that term is traditionally used in criminal cases. FED. R. CRIM. P. 12(c) advisory committee's note. Because the amendment did not alter the applicable standard, we apply the current version of Rule 12. *See United States v. Bennett*, 332 F.3d 1094, 1100 n.2 (7th Cir. 2003).

[4] The court of appeals analyzes the good-cause determination for abuse of discretion, because "the good-cause decision is committed to the district court." *Acox*, 595 F.3d at 732. When confronted with a motion that was not presented to the district court, we ask whether the dis-

Although McMillian filed a motion to suppress, he did not argue before the district court that his arrest was unconstitutional. This court "has repeatedly held that there is no good cause to excuse a Rule 12 forfeiture where a defendant files a timely motion to suppress on one ground, and later seeks to assert a new ground for suppression for the first time on appeal." *Brodie*, 507 F.3d at 531.

During one of the evidentiary hearings, McMillian's trial counsel argued that McMillian was arrested outside the house to support the argument that there was no probable cause to search inside the house. Appellate counsel now argues the opposite, that McMillian was arrested inside. McMillian offers no explanation for this change of course that would support a finding of good cause for failure to make the argument before the district court. Rather, he argues that "these are purely legal questions based on the factual record developed below" and that "the government is not disadvantaged by McMillian raising the issues on appeal." Brief for Appellant at 19. We disagree. If McMillian had made this argument before the district court, the government might have called witnesses to testify about whether the arrest took place inside or outside. *See United States v. Murdock*, 491 F.3d 694, 698–99 (7th Cir. 2007). We conclude that there is no basis to excuse McMillian's forfeiture of the point.

---

trict court would have abused its discretion had it denied a request to present an untimely motion. *Id*. Where, as here, the defendant has not articulated any rationale that would support a good-cause determination, the district court would not have abused its discretion by refusing to consider an untimely motion. *Id*. at 733.

McMillian also argues that even if he was outside at the time of his arrest, his presence was coerced. *See, e.g., Sparing v. Vill. of Olympia Fields*, 266 F.3d 684, 689–91 (7th Cir. 2001); *United States v. Saari*, 272 F.3d 804, 809–10 (6th Cir. 2001); *United States v. Maez*, 872 F.2d 1444, 1450–53 (10th Cir. 1989). Again, McMillian has not offered any explanation for his failure to present this argument to the district court. Because of this omission, the government did not have an opportunity to respond or present evidence related to voluntariness. Accordingly, McMillian has forfeited this argument. *See United States v. Kirkland*, 567 F.3d 316, 321 (7th Cir. 2009) (finding forfeiture when defense counsel "failed to develop the argument with citation to any relevant authority or meaningful discussion," because the omission "does not give the government a meaningful opportunity to rebut [the defendant's] claims, nor does it notify the district court that it needs to address them"); *Murdock*, 491 F.3d at 698–99.

In sum, McMillian cannot challenge the legality of his arrest on appeal.

### B. Legality of the Protective Sweep

McMillian argued before the district court that the warrantless protective sweep of his home violated the Fourth Amendment. The government conceded that the sweep was unconstitutional and agreed to strike the reference to the AK-47 rifle from the search warrant affidavit. We agree that the protective sweep violated the Fourth Amendment, because the officers did not reasonably believe "that the area swept harbored an individual posing a danger to the officer or others." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). The district court properly struck the observation of the rifle from the search warrant affidavit.

### C. Legality of Officer Shull's Entry

McMillian argues that Officer Shull's entry into the back bedroom was unlawful because McMillian and Knueppel's consent was tainted by the prior unlawful sweep.[5]  Generally, an officer need not obtain a warrant if a suspect voluntarily consents to a search.  *See Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973).  But otherwise voluntary consent can nonetheless be tainted by a prior illegal entry.  *See United States v. Robeles-Ortega*, 348 F.3d 679, 681 (7th Cir. 2003) ("Where the search following the illegal entry is justified based on alleged consent, courts must determine whether that consent was voluntary, and in addition the court must determine whether the illegal entry tainted that consent.").  McMillian does not challenge the district court's determination that he and Knueppel impliedly consented to Officer Shull's entry.  Instead, he argues that consent was tainted by the illegal protective sweep.

McMillian's appellate counsel conceded during argument that trial counsel did not argue before the district court that any consent was tainted.  Appellate counsel attempted to show that the argument was not forfeited by stating:  "Mr. McMillian pretty clearly said the protective sweep was unlawful and the fruits of that sweep should be excluded from evidence.  Now, the precise kind of legal argument that we've made on appeal I think fleshes that out."  Oral Argument at 4:56–5:10.  The closest McMillian came to arguing

---

[5] Although McMillian also argues that consent was tainted because his arrest was illegal, we have concluded that he has forfeited his challenge to the arrest.

that consent was tainted was during the evidentiary hearing before Judge Clevert.  There, trial counsel stated:

> When the tac squad told Officer Shull that there is a rifle case inside and Officer Shull shows [sic] that Tyrone McMillian is a convicted felon, he's going to find a way to go back into that residence come hell or high water and so he tells Ashley Knueppel let's go in.  He goes in because he wants to find that weapon and have another case against Tyrone McMillian.

Appellant's App. at A50.  In that part of the hearing, McMillian's counsel did suggest that Officer Shull exploited information obtained from the illegal sweep when he entered the bedroom.  But trial counsel made that point to support the argument that "implied consent . . . was not given in this case." *Id.*

A defendant must expressly raise an argument before the district court in order to preserve it for appeal.  *See, e.g.*, *Kelly*, 772 F.3d at 1078–79 ("Kelly nowhere . . . explicitly argued that the warrant failed for lack of underlying probable cause. . . .  Kelly's sporadic references to probable cause in the context of a particularity challenge were insufficient to raise the argument before the district court.").  For instance, in *United States v. Murdock*, 491 F.3d 694 (7th Cir. 2007), this court held that a defendant had forfeited a suppression argument when he claimed that he was not read *Miranda* warnings before the district court but argued on appeal that his confession was involuntary.  *Id.* at 698–99.  There, "appellate counsel contend[ed] that Murdock's argument at his suppression hearing was sufficient to encompass his argu-

ment on appeal." *Id.* at 698. The court nonetheless conclud-
ed that there was "no reason why trial counsel could not
have broadened his argument, and by failing to do so he
gave the government no reason to offer evidence to rebut his
new allegation." *Id.* at 698–99.

McMillian has forfeited the argument that consent was
tainted. He therefore must show good cause for failing to
press the argument before the district court. FED. R. CRIM. P.
12(c)(3). McMillian has offered no viable justification for
failing to argue that consent was tainted. In addition, we
note that the government would be unfairly prejudiced were
McMillian permitted to assert this point for the first time on
appeal. Because McMillian did not make this argument be-
fore the district court or cite to case law holding that an ille-
gal entry can taint otherwise valid consent, the government
had no opportunity to respond. This is particularly signifi-
cant because the government bears the burden of showing
that consent was purged of the taint caused by an illegal en-
try. *See Robeles-Ortega*, 348 F.3d at 683.[6]

**D. Search Warrant**

McMillian contends that the search warrant was defec-
tive. He argues that there was no probable cause to issue the
warrant, because the affidavit cited information obtained
during the illegal sweep and entry into the bedroom and be-
cause the affidavit did not contain enough information to

---

[6] To determine whether consent was tainted, a court considers "(1)
the temporal proximity of the illegal entry and the consent, (2) the pres-
ence of intervening circumstances, and, particularly, (3) the purpose and
flagrancy of the official misconduct." *Robeles-Ortega*, 348 F.3d at 681 (cit-
ing *Brown v. Illinois*, 422 U.S. 590, 603–04 (1975)).

support a search for evidence of a double homicide. McMillian also argues that the warrant was defective because Detective Gomez was not under oath when he corrected the address on the warrant and affidavit.

Under the Fourth Amendment of the U.S. Constitution, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. In considering a court's probable cause determination, we review legal conclusions de novo and factual findings for clear error. *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003). We review de novo whether the oath or affirmation requirement was met. *United States v. Wilson*, 169 F.3d 418, 422 (7th Cir. 1999).

The only evidence supporting probable cause that was presented to the judge who issued the warrant was an affidavit describing a rifle and two gun cases purportedly observed in McMillian's house and the informant's statement concerning McMillian's suspected involvement in two 2007 homicides. "When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit." *Peck*, 317 F.3d at 755. To determine whether probable cause existed, the court must ask whether, "based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *Id.* at 756.

The black rifle case, which was incorrectly listed in the affidavit as a black assault rifle, was observed during the protective sweep. The reference to the rifle was properly strick-

en from the affidavit after the government conceded that the protective sweep was illegal.

The magistrate and district judges were also correct to conclude that the informant's tip did not establish probable cause to search for evidence of the homicides.  The affidavit does not indicate that the police independently corroborated the informant's allegations, nor does it include any information concerning the informant's credibility and reliability. Thus, there was no probable cause to search for evidence of the homicides.  *See Illinois v. Gates*, 462 U.S. 213, 241 (1983) ("Our decisions applying the totality-of-the-circumstances analysis . . . have consistently recognized the value of corroboration of details of an informant's tip by independent police work."); *United States v. Bell*, 585 F.3d 1045, 1050 (7th Cir. 2009); *Peck*, 317 F.3d at 756–57.

With the descriptions of the rifle and the homicide allegations excised from the affidavit, the validity of the warrant depends on whether the two gun cases Officer Shull observed by the bed supplied probable cause.  Because McMillian consented to Officer Shull's entry into the bedroom and McMillian has forfeited the argument that consent was tainted, the observation of the gun cases need not be excised from the search warrant affidavit.  A reasonable person considering Officer Shull's observation of the two gun cases would believe that a search would reveal firearms and ammunition. Thus, we affirm Magistrate Judge Joseph's finding that there

was probable cause to issue a warrant to search McMillian's house for firearms.[7]

Finally, Detective Gomez did not violate the Fourth Amendment when he corrected the address without being placed under oath. The warrant was valid as originally drafted, and the correction of a typographical error did not render it defective.

The Fourth Amendment's particularity requirement limits "the authorization to search to the specific areas and things for which there is probable cause to search,"and in doing so "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. " *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). The requirement is satisfied if "the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925).

This court has upheld search warrants that include "minor technical errors or omissions . . . so long as there is no danger that the officers might inadvertently search the wrong place." *Kelly*, 772 F.3d at 1081 (upholding a warrant that incorrectly described the premises as the "upper apartment," when the target was the two-story unit at the back of the residence). Although this court has not addressed this particular situation, the court upheld a search warrant when the affidavit (but not the warrant) contained a typographical

---

[7] Judge Clevert did not expressly rule on the question of probable cause to search for weapons, although he determined that the officers acted in good faith despite any deficiencies in the search warrant.

error in one digit of the address. *United States v. Jones*, 208
F.3d 603, 608 (7th Cir. 2000) ("[T]his warrant provided other,
ample, descriptions of the location of Jones' house. . . . An
officer could have relied on the remaining guides, without
the numeric address, and still found the correct house.").
Courts in other circuits have upheld warrants against partic-
ularity challenges in situations like this one in which both
the warrant and affidavit listed the incorrect street number.
*See, e.g.*, *United States v. Lora-Solano*, 330 F.3d 1288, 1293–94
(10th Cir. 2003); *United States v. Valentine*, 984 F.2d 906, 909
(8th Cir. 1993); *United States v. Garza*, 980 F.2d 546, 551–52
(9th Cir. 1992); *United States v. Burke*, 784 F.2d 1090, 1092–93
(11th Cir. 1986); *United States v. Turner*, 770 F.2d 1508, 1510–
11 (9th Cir. 1985); *United States v. Gitcho*, 601 F.2d 369, 371–72
(8th Cir. 1979). In assessing the validity of the warrants,
these courts have considered whether the warrant and affi-
davit provided a detailed description of the premises and
whether the officers executing the warrant knew the correct
target location or could have searched the wrong residence.
*See Garza*, 980 F.2d at 552; *Burke*, 784 F.2d at 1092–93; *Turner*,
770 F.2d at 1511. We agree with these courts and conclude
that a typographical error in an address does not invalidate a
warrant if the affidavit otherwise identifies the targeted
premises in sufficient detail and there is no chance that an-
other location might be searched by mistake. *See Kelly*, 772
F.3d at 1081.

   In this case, the affidavit listed McMillian's house as 6633
West Darnell Avenue, even though the correct address was
6333 West Darnell Avenue. Although the address was off by
one digit, other portions of the affidavit contained sufficient
description such that an officer could "with reasonable effort

ascertain and identify the place intended." *Steele*, 267 U.S. at 503. The affidavit and warrant described the residence as:

> a single family, ranch style residence that is lo-
> cated on the south side of Darnell Ave. The
> residence is tan in color, with a wood material
> upper and brick material lower portion. The
> driveway is located on the East side of the resi-
> dence and the roof in [sic] constructed of
> brown asphalt like shingles. The numbers 6633
> [sic] are located on the North East portion of
> the residence.

Appellant's App. at A7, A10–A11. Moreover, there was no chance that the officers could have searched the wrong premises, as they had personal knowledge of McMillian's house. Under these circumstances, the warrant described McMillian's house with sufficient particularity, and it did not become invalid when Detective Gomez corrected the typographical error with the issuing judge's permission.

In sum, we conclude that the search warrant satisfied the Fourth Amendment's requirements.

### III. Conclusion

For the reasons stated above, we AFFIRM the district court's denial of McMillian's motion to quash the search warrant.